[No. C003754. Third Dist. Sept. 30, 1988.]

MARY NOTT, Petitioner, v.
THE SUPERIOR COURT OF PLACER COUNTY, Respondent;
SUGAR BOWL CORPORATION, Real Party in Interest.

---

COUNSEL

Georgann B. Johnston for Petitioner.

No appearance for Respondent.

Paul S. Rosenlund, John E. Fagan and Hancock, Rothert & Bunshoft for Real Party in Interest.

---

OPINION

**BLEASE, Acting P. J.**—In this writ proceeding we hold that an arbitration hearing is not a "trial," as that term is used in Code of Civil Procedure section 998, subdivision (b)(3),[1] and accordingly conclude that the commencement of the hearing does not terminate an offer to enter a compromise judgment in a civil action. We will issue a peremptory writ directing the respondent court to enter judgment in favor of petitioner, Mary Nott, predicated upon her timely acceptance of an offer from real party in interest Sugar Bowl Corporation (Sugar Bowl).

### FACTS AND PROCEDURAL BACKGROUND

Nott commenced the underlying action against Sugar Bowl and Scott Harms alleging that she sustained injuries in a skiing accident when struck by Harms at a facility owned and operated by Sugar Bowl. On August 10, 1987, the case was scheduled for judicial arbitration to be held September 16. On August 31, Sugar Bowl served Nott with a written offer to settle the case for $3,501, pursuant to section 998. The matter proceeded to an arbitration hearing. Before the announcement of the arbitrator's decision, Nott served and filed an acceptance of the Sugar Bowl offer. The acceptance was mailed to Sugar Bowl on September 25 and filed with the court on September 28.

On October 7, 1987, the arbitrator awarded Nott $24,950 damages against Harms but found Sugar Bowl not to be negligent. Harms rejected

---

[1] Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

the award but served an offer to compromise on Nott which she accepted. He was dismissed from the action. Then Nott moved for entry of judgment against Sugar Bowl predicated upon the acceptance of its offer. Sugar Bowl opposed the motion, claiming that the offer was either terminated as a matter of law when the arbitration hearing commenced or that statements made at the arbitration hearing constituted a rejection of its offer.

This petition followed a denial of Nott's motion.

## DISCUSSION

### I

Section 998 provides a means by which the parties to a civil action may agree to a compromise judgment. The agreement is initiated by an offer in writing. Subdivision (b)(2), upon which Sugar Bowl relies, provides that "[i]f the offer is not accepted prior to *trial* or within 30 days after it is made, whichever occurs first, it shall be deemed withdrawn . . . ." (Italics added.)[2] Sugar Bowl argues that the *policy* of section 998, to encourage the settlement of litigation without trial, would be advanced if an arbitration hearing were viewed as a "trial" for purposes of termination of the offer. This generalized appeal to policy encompasses two different claims. First, the policy provides a purpose which justifies the judicial construction of "trial" as inclusive of a judicial arbitration. Alternatively, the policy justifies the creation of an analogous rule of common law. Neither claim has merit.

---

[2] Section 998 provides in pertinent part: "[¶] (b) Not less than 10 days prior to commencement of trial, any party may serve an offer in writing upon any other party to the action to allow judgment to be taken in accordance with the terms and conditions stated at that time. [¶] (1) If the offer is accepted, the offer with proof of acceptance shall be filed and the clerk or the judge shall enter judgment accordingly. [¶] (2) If the offer is not accepted prior to trial or within 30 days after it is made, whichever occurs first, it shall be deemed withdrawn, and cannot be given in evidence upon the trial. [¶] (3) For purposes of this subdivision, a trial shall be deemed to be actually commenced at the beginning of the opening statement of the plaintiff or counsel, and if there is no opening statement, then at the time of the administering of the oath or affirmation to the first witness, or the introduction of any evidence. [¶] (c) If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment, the plaintiff shall not recover his or her costs and shall pay the defendant's costs from the time of the offer. In addition, in any action or proceeding other than an eminent domain action, the court, in its discretion, may require the plaintiff to pay the defendant's costs from the date of filing of the complaint and a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, the preparation or trial of the case by the defendant. [¶] (d) If an offer made by a plaintiff is not accepted and the defendant fails to obtain a more favorable judgment, the court in its discretion may require the defendant to pay a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, the preparation or trial of the case by the plaintiff, in addition to plaintiff's costs."

### A.

██ In the first case the policy is advanced as a justification for the judicial construction *of* the statutory language. The language, however, must bear the meaning thus ascribed. "[T]he meaning of language is to be found in its usage and the occasion of a usage is an application of the language to particular circumstances. [Citations]." (*National Auto & Cas. Ins. Co.* v. *Contreras* (1987) 193 Cal.App.3d 831, 836 [238 Cal.Rptr. 627].) If the statutory language does not lend itself to the claimed application, the policy may not be used to rewrite the statute. (See Code Civ. Proc., § 1858.) Accordingly, a statutory policy may be employed only if it aids in the resolution of an uncertainty whether the language applies as claimed. (See *REA Enterprises* v. *California Coastal Zone Conservation Com.* (1975) 52 Cal.App.3d 596, 610 [125 Cal.Rptr. 201] and cases cited therein.) To employ a statutory policy in any other fashion leads to the circumstance assayed in the next subsection of this opinion.

██ The term "trial" cannot be read to bear the proffered meaning. (Cf. *Woodard* v. *Southern Cal. Permanente Medical Group* (1985) 171 Cal.App.3d 656, 665-666 [217 Cal.Rptr. 514].) Section 998 was enacted before the advent of the judicial arbitration statutes (Stats. 1971, ch. 1679, and Stats. 1975, ch. 1006), and hence the Legislature could not have then contemplated that "trial" includes an arbitration hearing. Section 998 is part of the general provisions of the Code of Civil Procedure, which govern the commencement, pleading, procedure and trial of civil actions. (Part 2, §§ 307 to 1060.) It employs the term "trial" within that context. The subdivision ((b)(3)), which governs the commencement of a "trial" for purposes of acceptance of a 998 offer, tracks the language of section 581, the dismissal statute applicable to civil actions. That provision invests a *court* in specified circumstances with authority to dismiss a civil action before the advent of a judicial proceeding at which a *"final disposition is to be made . . . ."* (*Berri* v. *Superior Court* (1955) 43 Cal.2d 856, 859-860 [279 P.2d 8], italics added; see also 7 Witkin, Cal. Procedure (3d ed. 1985) § 1, pp. 18-19; cf. § 998, subd. (b)(3) with § 581, subd. (a)(6).) Indeed, until 1986 section 998 simply measured "commencement of the trial as defined in . . . section 581 . . . ." (Stats. 1977, ch. 458.) The companion section 583 similarly applies to the dismissal of civil actions. For the same reasons advanced here, it has been held that judicial arbitration hearing is not a trial for purposes of its invocation. (See *Brown* v. *Engstrom* (1979) 89 Cal.App.3d 513, 518-520 [152 Cal.Rptr. 628].)

Judicial arbitration is classified as a special proceeding. (Part 3, ch. 2.5, §§ 1141.10 to 1141.32.) Although special proceedings involving a court or jury are subject to section 581, subdivision (a)(1), a judicial arbitration

proceeding is not such. Nor does it meet the test of finality. A judicial arbitration hearing does not result in a judgment but in an arbitration award. (§ 1141.20.) It does not finally resolve any issue of fact or law in the case. A party may freely set aside an arbitration award by a timely request for a "de novo trial, by court or jury, both as to law and facts." (§ 1141.20, subd. (b).)

### B.

That brings us to the only other way in which the policy of section 998 might be employed to the end sought by Sugar Bowl; it sanctions the minting of a common law rule terminating a section 998 offer at the commencement of a judicial arbitration hearing. Sugar Bowl urges that such a rule is in harmony with the evident policy of section 998. It reasons that the policy of section 998 is to induce the offeree to accept a reasonable offer to avoid incurring the incremental expenses of a judicial hearing on the merits. (Cf. *Woodard* v. *Southern Cal. Permanente Medical Group, supra,* 171 Cal.App.3d at pp. 665-666.) Therefore, an analogous inducement should be fashioned to defer incurring the lesser but analogous expenses of a judicial arbitration hearing. We are thus asked to embellish the statute by a rule of our making. "When a judicial rule is thus modelled after a statutory rule, the very fact of copying signifies that it is not to be confused with interpretation that clarifies an obscure statute or amplifies a skeletal one. Such a judicial rule takes on a life of its own in the common law." (Traynor, *Statutes Revolving in Common-Law Orbits* (1968) 43 State Bar J. 509, 531.)

"A judicial rule that thus emerges signifies a discriminating choice of policy, in sharp contrast to the routine compliance with a legislative policy when the statute encompassing it governs." (*Traynor, supra,* at pp. 537-538.) The common law power to fashion rules governing past transactions is not coextensive with the court's notions of what might be a good rule in future transactions. That a proposed rule appears harmonious with a public policy indicated in a statute is a point in its favor. However, that is not a sufficient warrant for making new law. In this case one might as easily read section 998's policy resolution as saying that its circumstances of termination are the only conditions warranting a termination of the offer. Moreover, invocation of the common law power is impelled by the felt necessity and utility of such action and braked by the prospect of unfair, i.e., retroactive, alteration of the rules of the game. We are reminded of Jeremy Bentham's criticism of common law powers: "It is the judges . . . that make the common law. . . . When your dog does anything you want to break him of, you wait till he does it, and then beat him for it. This is the way you make laws for your dog: and this is the way the judges make law for you and me." (The Quotable Lawyer (1986) p. 145.)

Fashioning a retrospective rule in this case would unfairly alter the rules of the game after it has been played. The principles governing a section 998 transaction are those of contract law. (See e.g., *T. M. Cobb Co.* v. *Superior Court* (1984) 36 Cal.3d 273, 280 [204 Cal.Rptr. 143, 682 P.2d 338].) Under contract law an offeree's power of acceptance is terminated at the time specified in the offer, if a time is specified. In a section 998 offer the specification is supplied by the statute, i.e., 30 days after the offer is made or the commencement of "trial" within the meaning of section 998. Terminating the power of acceptance at an earlier time as a matter of common law fiat alters the rules after the fact.

We find no compelling necessity which overcomes the institutional disinclination to make new law in these circumstances. Sugar Bowl could have achieved its proffered objective under the existing scheme of things by making its offer more than 30 days prior to the judicial arbitration hearing. Alternately, it could have revoked its offer at the outset of that hearing or any time prior to Nott's acceptance. (*T. M. Cobb Co., supra,* 36 Cal.3d at pp. 278-283.) Accordingly, we reject the claim for a common law rule that a judicial arbitration hearing terminates a section 998 offer.

## II

■ Finally, Sugar Bowl contends that the respondent court was correct because the conduct of the parties at the judicial arbitration hearing manifested a revocation or rejection of the section 998 offer. It argues that statements made by its counsel at the arbitration hearing that the arbitrator should award Nott nothing constituted a revocation of the section 998 offer. It also claims Nott's failure to accept the offer prior to the arbitration was an implied rejection of the offer, and that her request for an award in her favor was a rejection of the offer.

The record does not contain a transcript of the arbitration proceeding. Assuming the accuracy of defendant's characterization of the parties' comments at the arbitration, Sugar Bowl's claims are unavailing. Both a revocation by the offeror and a rejection by the offeree require the communication of notice of such action to the other party. (Civ. Code, § 1587, subd. 1; 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, §§ 168, 172, pp. 185, 187.) Statements at an arbitration regarding the value and disposition of a case are directed to the resolution of the matter by an adjudication by the arbitrator. They do not address the resolution of the matter by contract. Hence, they manifest no intention to reject or revoke the outstanding section 998 offer. We see no inconsistency between continued contemplation of contractual resolution while putting one's best foot forward in the adjudicative proceeding. (See, e.g., Rest.2d Contracts, § 43, com. d.)

Sugar Bowl's offer was still outstanding when Nott indicated her acceptance of it. Her acceptance was timely made. Accordingly, judgment should have been entered on the section 998 contract. (§ 998, subd. (b)(1).)

## Disposition

We have complied with the necessary procedural prerequisites and shall therefore order issuance of a peremptory writ without first issuing an alternative writ. (See *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 [203 Cal.Rptr. 626, 681 P.2d 893].)

Let a peremptory writ of mandate issue directing respondent superior court to vacate its order denying plaintiff's motion for entry of judgment and to enter a new order granting the motion for entry of judgment.

Carr, J., and Sparks, J., concurred.