[No. S019254. Dec. 26, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
ALMA MAE HULL, Defendant and Appellant.

**COUNSEL**

Millard A. Murphy, under appointment by the Supreme Court, for Defendant and Appellant.

Wilbur F. Littlefield, Public Defender (Los Angeles), Laurence M. Sarnoff and John Hamilton Scott, Deputy Public Defenders, as Amici Curiae on behalf of Defendant and Appellant.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Richard B. Iglehart and George Williamson, Chief Assistant Attorneys General, Arnold

O. Overoye, Assistant Attorney General, Louis Vasquez, Shirley A. Nelson, Robert R. Anderson, Michael Weinberger and Carlos A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

Michael D. Bradbury, District Attorney (Ventura), and Michael D. Schwartz, Deputy District Attorney, as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**PANELLI, J.**—We granted review to determine whether a writ of mandate under Code of Civil Procedure section 170.3, subdivision (d)[1] (hereafter section 170.3(d)) is the exclusive means by which a party may seek review of an unsuccessful peremptory challenge against a trial judge. (§ 170.6.) We conclude, as did the Court of Appeal in this case, that section 170.3(d) prescribes the exclusive means of appellate review of an unsuccessful peremptory challenge.

### FACTS

Petitioner Alma Mae Hull (Hull) was charged by information with the sale of cocaine base (Health & Saf. Code, § 11352).[2] She waived arraignment and pleaded not guilty. Jury trial was set for October 16, 1989, at a pretrial conference held before Judge Pierson. Later, the case was assigned to Judge Stone's courtroom. However, after Presiding Judge Cantwell granted a continuance, another pretrial conference was set for October 26, 1989, and the trial was reset for October 30, 1989.

At the second pretrial conference, held before Judge Azevedo, the trial date of October 30 was confirmed. Although Hull's trial counsel was not present at this pretrial conference, Hull herself was present.

On Friday, October 27, 1989, Judge Cantwell presided over another "department setting conference." As a result of this conference, the case was assigned to Judge Pierson's courtroom for trial. Neither Hull nor her trial counsel was present. Subsequently, on Monday, October 30, Hull filed a

---

[1]All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2]The information also charged that at the time of the sale, Hull was released on her own recognizance pending trial on an earlier offense. (Pen. Code, § 12022.1.) Furthermore, according to the information, Hull was ineligible for probation, and eligible for an enhanced sentence, in that she had been convicted of a prior violation of Health and Safety Code section 11352. (Health & Saf. Code, §§ 11370, subd. (a), 11370.2.)

peremptory challenge before Presiding Judge Cantwell, pursuant to section 170.6,[3] to disqualify Judge Pierson. Judge Cantwell denied the motion as untimely.

Hull waived her right to a jury trial and proceeded to trial before Judge Pierson. Judge Pierson found Hull guilty and also found true the alleged prior conviction. The judge also found that Hull was on her own recognizance pending trial on still another charge at the time of the offense. On November 27, 1989, Hull was sentenced to a total term of six years and four months. This term was to run consecutively to the sentence already imposed for Hull's prior offense.

Hull filed an appeal from the judgment of conviction that raised only the denial of her peremptory challenge motion. The Court of Appeal held that an order denying a peremptory challenge of a trial judge is not an appealable order and hence was not reviewable on appeal. Consequently, the Court of Appeal affirmed the trial court's judgment.

## DISCUSSION

Hull contends that the Court of Appeal erred in holding that review of a denial of a peremptory challenge under section 170.6 was subject to the provisions of section 170.3(d). We disagree.

Chapter 3 of title 2 of part 1 of the Code of Civil Procedure, entitled "Disqualification of Judges," prescribes the means by which a party may challenge an assigned judge "for cause" (§ 170.1) or may exercise a peremptory challenge against the judge (§ 170.6). In 1984, as part of a substantial overhaul of the provisions of part 1, title 2, chapter 3, of the Code of Civil Procedure, the Legislature enacted section 170.3(d) pertaining to appellate review of disqualification motions. Section 170.3(d) provides: "The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from the appropriate court of appeal sought within 10 days of notice to the parties of the decision and only by the parties to the proceeding." (§ 170.3(d); see Stats. 1984, ch. 1555, § 1 et seq., pp. 5479-5484.)

A split of authority has developed in the Courts of Appeal as to whether section 170.3(d) applies to both challenges for cause and peremptory challenges, or only to challenges for cause. The Court of Appeal in *People* v.

---

[3]Section 170.6 states in part: "No judge, court commissioner, or referee of any superior, municipal or justice court of the State of California shall try any civil or criminal action or special proceeding of any kind or character nor hear any matter therein which involves a contested issue of law or fact when it shall be established as hereinafter provided that the judge or court commissioner is prejudiced against any party or attorney or the interest of any party or attorney appearing in the action or proceeding."

*Jenkins* (1987) 196 Cal.App.3d 394 [241 Cal.Rptr. 827] (hereafter *Jenkins*) addressed challenges for cause and held that section 170.3(d) makes mandamus the sole appellate remedy for review of an order denying a motion to disqualify a judge for cause. (196 Cal.App.3d at pp. 403-404.) According to the court, "[t]he unambiguous language of [section 170.3(d)] indicates that an order determining disqualification is reviewable 'only' by writ, thereby precluding review on appeal from a judgment. The Legislature obviously opted for speedy review of a disqualification ruling, since permitting that ruling to be attacked later on appeal of the judgment could invalidate every ruling made by the trial court judge after the disqualification motion was denied." (*Ibid.*) The *Jenkins* court did not address section 170.3(d)'s applicability to peremptory challenges under section 170.6.

In *Woodman* v. *Superior Court* (1987) 196 Cal.App.3d 407 [241 Cal.Rptr. 818] (hereafter *Woodman*),[4] the Court of Appeal specifically held that the limitation on appellate review set forth in section 170.3(d) applies only to challenges for cause. The *Woodman* court examined the legislative history of section 170.3(d) and concluded "that the 1984 revision of the challenge for cause statute, of which [section 170.3(d)] is part, was to have no effect on the peremptory challenge statute." (196 Cal.App.3d at pp. 413-414.) The court reached this conclusion by relying on the statement of the Senate Final History of Senate Bill No. 1633, 1983-1984 Regular Session, that " 'Code of Civil Procedure Sec. 170.6 provides for the peremptory challenge of a trial court judge. *This bill would not amend that section.*' " (196 Cal.App.3d at p. 414, italics in *Woodman.*) The *Woodman* court concluded that "the mere use of the phrase 'disqualification of a judge' in the time limitation provision of section 170.3, subdivision (d) does not evince a legislative intent that the limitation apply to all disqualification motions." (*Id.* at p. 413.)

Rejecting *Woodman*, the Court of Appeal in *Guedalia* v. *Superior Court* (1989) 211 Cal.App.3d 1156 [260 Cal.Rptr. 99] (hereafter *Guedalia*) held that section 170.3(d) "is the exclusive appellate remedy for any motion to disqualify a judge, including peremptory challenges pursuant to section 170.6." (211 Cal.App.3d at p. 1163.) The *Guedalia* court expressly agreed with *Jenkins*'s statutory analysis of section 170.3(d) and concluded that the analysis applies to both types of challenges. (211 Cal.App.3d at pp. 1159-1160.) Thus, *Guedalia* stated, "the plain language of [section 170.3(d)] does not purport to limit its applicability to challenges 'for cause.' To the contrary, it is broadly applicable to any 'determination of the question of the disqualification of a judge . . . .' . . . The broad language plainly evinces an intention that [section 170.3(d)] has generic applicability to all disqualification motions, including section 170.6 motions." (*Id.* at p. 1160.)

---

[4]Although *Woodman* and *Jenkins* were decided on the same day and by the same division of the Court of Appeal, neither decision makes reference to the other.

Moreover, *Guedalia* explained, because section 170.3(d) is part of the provisions of part 1, title 2, chapter 3, of the Code of Civil Procedure, which deals exclusively with questions of disqualification of judges, the section's "limitation on appellate review of disqualification determinations appears fully applicable to *any* disqualification motions within the ambit of chapter 3, including motions under section 170.6." (211 Cal.App.3d at p. 1161, italics in original.)

*Guedalia* recognized that *Woodman* (*supra*, 196 Cal.App.3d 407) reached a contrary conclusion based on its review of section 170.3(d)'s legislative history. However, *Guedalia* stated, its "review of that same legislative history . . . reveals no intention to *exclude* section 170.6 determinations from the *appellate review* provisions enacted by the Legislature." (211 Cal.App.3d at p. 1161, italics in original.) According to *Guedalia*, in excluding peremptory challenges from section 170.3(d)'s provisions, the *Woodman* court adopted an incorrect and unnecessarily broad interpretation of the legislative history. (See *post*, p. 275.)

Finally, *Guedalia* explained, holding section 170.3(d)'s 10-day limitation applicable to section 170.6 peremptory challenges had the added benefit of promoting the twin policies advanced by section 170.3(d)—judicial economy and elimination of the unfair manipulation of erroneously denied challenges. (211 Cal.App.3d at pp. 1162-1163.)[5]

Hull urges us to resolve the split between *Guedalia* and *Woodman* by adopting the *Woodman* rationale. ■ We begin our analysis by noting that "[t]he fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.]" (*People* v. *Pieters* (1991) 52 Cal.3d 894, 898 [276 Cal.Rptr. 918, 802 P.2d 420].) In determining this intent, courts look first to the words contained in the statute, giving them their usual and ordinary meaning. (*City of Santa Cruz* v. *Municipal Court* (1989) 49 Cal.3d 74, 90 [260 Cal.Rptr. 520, 776 P.2d 222]; *Title Ins. & Trust Co.* v. *County of Riverside* (1989) 48 Cal.3d 84, 91 [255 Cal.Rptr. 670, 767 P.2d 1148].)

■ The term "disqualification of a judge," as used in section 170.3(d), has a usual and ordinary significance that requires little interpretation. To

---

[5]The *Guedalia* decision was recently followed in *People* v. *Broxson* (1991) 228 Cal.App.3d 977 [278 Cal.Rptr. 917]. In *Broxson* the defendant filed a motion to peremptorily disqualify the sentencing judge under section 170.6, and the trial court struck the motion as untimely. Rather than petitioning for a writ of mandate, the defendant claimed on appeal that the sentencing judge erroneously failed to disqualify himself. In following *Guedalia*, the *Broxson* court rejected *Woodman*'s analysis and determined that *Guedalia* "has the better of the argument." (*People* v. *Broxson, supra*, 228 Cal.App.3d at p. 979.)

"disqualify" means "to deprive of a power, right, or privilege." (Webster's New Internat. Dict. (3d ed. 1961) p. 655.) Hence, according to the ordinary meaning of the term, a disqualified judge is deprived of the power, right or privilege to hear a case. This meaning applies whether the judge is challenged for cause or by a peremptory challenge. "The broad language plainly evinces an intention that [section 170.3(d)] has generic applicability to all disqualification motions, including section 170.6 motions." (*Guedalia, supra,* 211 Cal.App.3d at p. 1160.)

An examination of the framework of the disqualification statutes supports this "ordinary meaning" interpretation. ■ "A statute must be construed 'in the context of the entire statutory system of which it is a part, in order to achieve harmony among the parts.' [Citation.]" (*People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1009 [239 Cal.Rptr. 656, 741 P.2d 154].) ■ As noted, section 170.3(d) is part of the provisions of title 2, chapter 3, of the Code of Civil Procedure. Both kinds of disqualification determinations, for cause and peremptory, are included within chapter 3. (*Guedalia, supra,* 211 Cal.App.3d at pp. 1161-1162.) Indeed, the entire chapter is entitled "Disqualifications of Judges."

Hull maintains that the division, article, chapter, and section headings of the codes are not controlling, as they are not regarded as official. She argues that for-cause and peremptory challenges were simply put in the same chapter as a matter of organizational convenience. ■ However, it is well established that " 'chapter and section headings [of an act] may properly be considered in determining legislative intent' [citation], and are entitled to considerable weight. [Citation.]" (*American Federation of Teachers* v. *Board of Education* (1980) 107 Cal.App.3d 829, 836 [166 Cal.Rptr. 89]; see also *City of Los Angeles* v. *County of Los Angeles* (1989) 216 Cal.App.3d 916, 923 [265 Cal.Rptr. 461].) ■ The fact that section 170.6 appears under the chapter heading "Disqualifications of Judges" provides a strong indication that the Legislature intended a section 170.6 peremptory challenge to constitute a "disqualification" within the meaning of section 170.3(d).

Furthermore, one of the strongest arguments against Hull's narrow interpretation of section 170.3(d) is that the public policy considerations underlying that section are equally applicable to, and compelling for, both challenges for cause and peremptory challenges. Section 170.3 has the dual purpose of promoting "judicial economy" and "fundamental fairness." (*Guedalia, supra,* 211 Cal.App.3d at pp. 1162-1163.) The statute "fosters judicial economy by eliminating the waste of time and money which inheres if the litigation is permitted to continue unabated, only to be vacated on appeal because the subsequent rulings and judgment were declared 'void' by virtue of the erroneously denied disqualification motion." (*Id.* at p. 1162.)

Additionally, if a peremptory challenge were an appealable order, the party requesting such a challenge might be given an "intolerable windfall." If the ultimate judgment were favorable to the moving party, the disqualification issue would be moot. However, if the ultimate judgment were unfavorable, the moving party would receive a second "bite at the apple," i.e., a second opportunity to win the merits of the case. (*Guedalia, supra,* 211 Cal.App.3d at p. 1162.)

With the enactment of section 170.3(d), fundamental fairness is promoted by ensuring that the parties, through a petition for a writ of mandate, receive " 'as speedy an appellate determination as possible.' " (*Jenkins, supra,* 196 Cal.App.3d at p. 404, quoting analysis of Sen. Bill No. 598 (1983-1984 Reg. Sess.) provided to the Sen. Com. on Judiciary by Professor Preble Stolz, Chair of the State Bar Committee that drafted the legislation, at p. 15.) There is no justifiable reason to presume that the Legislature would have granted a speedy and fundamentally fair avenue to litigants who make a for-cause challenge and yet require parties who make a peremptory challenge to suffer possible delay, waste, and the relitigation of issues.

Hull also argues that in enacting section 170.3(d) the Legislature never expressed an intent "to break with its long standing practice of keeping separate the provisions for" section 170.1 and section 170.6. However, the Legislature's intent can most readily and accurately be discerned by reading together all the provisions contained in chapter 3. (See *People* v. *Woodhead, supra,* 43 Cal.3d at p. 1009.) Section 170.6, subdivision (7), specifically states that "[n]othing in [section 170.6] shall affect or limit the provisions of Section 170 . . . and this section shall be construed as *cumulative* thereto." (§ 170.6, subd. (7), italics added.) Accordingly, sections 170.6 and 170 were intended to be read together.

Sections 170 and 170.6, when read together (see § 170.6, subd. (7)), establish that a judge who is successfully challenged under section 170.6 is in fact "disqualified," within the meaning of section 170. Sections 170 and 170.3 were enacted together. (Stats. 1984, ch. 1555, §§ 2, 7, pp. 5479, 5481.) If "disqualified" has a given meaning when used in one of the statutes, it presumably shares that meaning in the other. (See *International Business Machines* v. *State Bd. of Equalization* (1980) 26 Cal.3d 923, 932 [163 Cal.Rptr. 782, 609 P.2d 1].) Consequently, because section 170's interpretation of the word "disqualified" is applicable to section 170.6 motions, it logically follows that section 170.3(d)'s use of the word "disqualification" also encompasses section 170.6 motions.

To read the term "disqualification of a judge" in section 170.3(d) as applying only to challenges for cause but not to peremptory challenges could

lead to absurd results. As noted by the Court of Appeal in the present case, section 170 provides that "[a] judge has a duty to decide any proceeding in which he or she is not disqualified." If a successful section 170.6 peremptory challenge does not result in the "disqualification" of the judge, then that judge would continue to have a duty, under section 170, to decide the proceeding regardless of the successful motion. This would create an absurd result that could not have been the Legislature's intent. (See *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1392 [241 Cal.Rptr. 67, 743 P.2d 1323].)

Hull echoes her theme that a judge challenged under section 170.6 is not "disqualified," as the term is used in section 170.3(d), by stressing the differences between challenges for cause and peremptory challenges. Hence, she argues, "a judge challenged for cause can be 'disqualified' only if any one or more of the grounds under Section 170.1 are found to be true. Such a 'disqualified' judge has no power to further act in the proceeding except in specified exceptions listed in Section 170.4. . . . On the other hand, a judge who is challenged pursuant to Section 170.6 is not deemed by the peremptory challenge statute to be 'disqualified,' nor should he or she be so described. The reason why such a judge is removed from further participation in the matter is because the explicit provisions of Section 170.6 prohibit that judge from trying any action or hearing any matter involving contested issues of law or fact." By purposefully avoiding using the word "disqualification" when describing the effect of section 170.6, this argument elevates semantics over substance. A judge who is prohibited from trying any action, or hearing any matter, involving contested issues of law or fact (§ 170.6) is for all practical purposes disqualified. As indicated above, the judge is deprived of a power, right or privilege.

Hull next maintains that a judge deciding a peremptory challenge does not conduct a "determination of the question of disqualification," as the phrase is used in section 170.3(d). Rather, she argues, "all that a judge facing a peremptory challenge has to do is the ministerial function of determining whether the challenge has the proper form, whether the challenge was presented at the proper time, and possibly whether the party or attorney is making more than one motion in any one action or special proceeding." We disagree. The manner and time in which prejudice may be established under section 170.6 is provided by that statute. (See § 170.6, subds. (2), (3), (5), and (6).) In certain situations, the judge may "determine" that prejudice was not properly established. For example, in the present case Hull did not timely file her motion. Hull submits an unduly narrow definition of the word "determination" by asserting that the term includes only a substantive evaluation of the merits of the motion. As stated earlier, words in a statute should

be given their "usual and ordinary meaning." (*City of Santa Cruz* v. *Municipal Court, supra*, 49 Cal.3d at p. 90.) Hull's narrow definition of the term "determination" is neither ordinary nor usual.

Hull further supports her argument that appellate review for challenges for cause and peremptory challenges must be different by relying on certain comments from the legislative history of the 1984 revisions to part 1, title 2, chapter 3, of the Code of Civil Procedure. (See also *Woodman, supra*, 196 Cal.App.3d at pp. 413-414.) These comments indicate that Senate Bill No. 1633, which "provide[s] a thorough revision of the law regarding disqualification of judges for cause," would not amend section 170.6. (See, e.g., Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1633 (1983-1984 Reg. Sess.) as amended March 29, 1984, pp. 2-3.) We believe, as did the Court of Appeal in this case, that Hull interprets this comment too broadly. As the *Guedalia* court explained, a review of the context of the statements from the legislative history reveals that "the reference [to section 170.6] simply stated the obvious: that the 1984 legislation did not intend to abrogate the *substantive* right to (or the *trial court* procedures for interposing) a peremptory challenge, but was instead directed toward substantive and trial court procedural reforms of 'for cause' challenges. [The] conclusion that *appellate relief limitations* [in section 170.3(d)] are applicable to peremptory challenges does not contravene the legislative history, since application of appellate relief limitations leaves untouched the substantive and trial court procedural aspects of peremptory challenges." (*Guedalia, supra*, 211 Cal.App.3d at p. 1161, italics in original.)

Finally, Hull maintains that if a peremptory challenge cannot be challenged on appeal, there will be no satisfactory method of appellate review. She argues that mandamus is not an effective remedy because "continuances are highly disfavored." She also argues that section 170.3(d) will result in an increase of "posttrial mandamus." However, the adequacy of the mandamus remedy is not an issue that is before us. The Legislature, through section 170.3(d), has specifically determined that a writ of mandate shall be the exclusive means of challenging a denial of a motion to disqualify a judge. A party who is denied a peremptory challenge can file a petition for a writ of mandate and a request for a stay with the Court of Appeal. If the Court of Appeal determines that the petition has merit, the court will likely grant a stay until the substantive issue is resolved. For this reason, a party who unsuccessfully makes a peremptory challenge is not exclusively subject to posttrial mandamus. Indeed, the immediate pendency of the trial may be a strong factor the court will consider in favor of granting a stay.

## Conclusion

Hull brought a peremptory challenge motion under section 170.6 to disqualify her trial judge. The motion was denied as untimely. Hull proceeded to trial and did not challenge the denial by writ of mandate under section 170.3(d). On appeal Hull attempted to challenge the denial of her motion. However, section 170.3(d) prescribes the exclusive means of appellate review of an unsuccessful peremptory challenge motion.

For the foregoing reasons, the judgment of the Court of Appeal is affirmed.

Lucas, C. J., Mosk, J., Arabian, J., Baxter, J., and George, J., concurred.

**KENNARD, J.**—I dissent.

The majority holds that a party seeking review of an unsuccessful peremptory challenge to a trial judge can do so only by petitioning for a writ of mandate within 10 days of notice of the disputed ruling, and not by post-judgment appeal. Although the majority's holding has practical advantages—immediate writ review generally will avoid reversal and retrial, thus promoting judicial economy—it finds no support in the statutory scheme.

## I. The Two Removal Methods

The Code of Civil Procedure[1] sets out two separate methods by which a party may prevent a trial judge or other judicial officer from presiding over a particular legal action. A party can seek to remove a judge under sections 170.1 and 170.3 (commonly called a "for cause" disqualification), or it can exercise a peremptory challenge against the judge under section 170.6, as defendant did here.

Section 170.1, subdivision (a) lists the grounds for disqualifying a judge "for cause."[2] Section 170.3 sets forth the procedure for such disqualification. A judge who "determines himself or herself to be disqualified" must notify the court's presiding judge of the recusal. (§ 170.3, subd. (a).) A disqualified

---

[1] All further statutory references are to this code.

[2] A judge may not hear a case when he or she (1) has personal knowledge of the facts to be decided, (2) has served as a lawyer in that case or a closely related case, (3) has a financial interest in the outcome of a proceeding, (4) is related by blood or marriage to a party, or to an officer of a corporate party, (5) is related to an attorney involved in a proceeding, (6) believes that the recusal would further the interests of justice, or entertains a substantial doubt as to his or her capacity to be impartial or that "a person aware of the facts" might entertain such a doubt, or (7) has a permanent or temporary physical impairment that prevents the judge from properly perceiving evidence or conducting a proceeding. (§ 170.1, subd. (a).)

judge may, however, seek a waiver from the parties after disclosing the basis for disqualification "on the record." (§ 170.3, subd. (b).)

If "a judge who should disqualify himself or herself refuses or fails to do so," the party seeking the disqualification must file a verified, written statement with the clerk of the court objecting to the hearing or trial before the judge and "setting forth the facts constituting the grounds for disqualification." (§ 170.3, subd. (c)(1).) The judge can either consent to the disqualification or file a verified answer admitting or denying the allegations in the challenger's statement and adding any additional facts material "to the question of disqualification." (§ 170.3, subd. (c)(3).) Unless there is a recusal by the challenged judge, the question of disqualification must be heard and "determined" by another judge agreed to by the parties. (§ 170.3, subd. (c)(5).) That determination may be based on the challenger's statement and the answer filed by the challenged judge, or by evidence presented at a hearing. (§ 170.3, subd. (c)(6).) Thus, when a judge's disqualification is contested, the challenging party must establish the facts supporting its claim of bias or prejudice to the satisfaction of a neutral judge, who is to determine whether there is "cause" for disqualification.

As noted earlier, a party seeking to remove a judge from hearing a particular matter involving a contested issue of law or fact is not restricted to filing a challenge based on any "cause" contained in section 170.1, but may seek removal simply by filing a peremptory challenge to the judge under section 170.6.

Section 170.6 prohibits a judge, or other judicial officer, from hearing a matter when that judicial officer is "prejudiced" against any party or lawyer in the proceeding. (§ 170.6, subd. (1).)[3] Prejudice under this section is established merely by "an oral or written motion without notice" supported by a sworn affidavit stating that the judge is prejudiced against either the party or the attorney for the party making the motion "so that the party or attorney cannot or believes that he or she cannot have a fair and impartial trial or hearing before the judge . . . ." (§ 170.6, subd. (2).)

Thus a "for cause" disqualification of a judge (§ 170.1) and a peremptory challenge (§ 170.6) differ in the following important respect: A "for cause" disqualification requires the challenger to establish bias or prejudice as a fact

---

[3]Section 170.6, subdivision (1) provides: "No judge, court commissioner, or referee of any superior, municipal or justice court of the State of California shall try any civil or criminal action or special proceeding of any kind or character nor hear any matter therein which involves a contested issue of law or fact when it shall be established as hereinafter provided that the judge or court commissioner is prejudiced against any party or attorney or the interest of any party or attorney appearing in the action or proceeding."

to the satisfaction of an impartial judge, but the allegation of bias in a peremptory challenge may not be contested and removal is automatic upon the filing of an affidavit of prejudice. (*Oak Grove School Dist.* v. *City Title Ins. Co.* (1963) 217 Cal.App.2d 678, 703 [32 Cal.Rptr. 288] [contrasting former § 170, subd. (5), from which § 170.1 was derived, with § 170.6].)

## II. APPEALABILITY

Before enactment of the provision at issue here, the rules for appellate review of orders on "for cause" disqualifications (§ 170.1) and on peremptory challenges (§ 170.6) were the same. Such orders were not separately appealable, but were subject to review by extraordinary writ and also on appeal from final judgment. (*Reichert* v. *General Ins. Co.* (1968) 68 Cal.2d 822, 825, fn. 1 [69 Cal.Rptr. 321, 442 P.2d 377]; *Briggs* v. *Superior Court* (1932) 215 Cal. 336, 342 [10 P.2d 1003]; *People* v. *Whitfield* (1986) 183 Cal.App.3d 299, 306 [228 Cal.Rptr. 82]; *Garcia* v. *Superior Court* (1984) 156 Cal.App.3d 670, 679 [203 Cal.Rptr. 290].)

In 1984, as part of its amendment of the statutory scheme governing "for cause" disqualifications, the Legislature added the following limitation on appellate remedies: "*The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from the appropriate court of appeal sought within 10 days of notice to the parties of the decision and only by the parties to the proceeding.*" (§ 170.3, subd. (d), italics added.) The issue here is whether this provision (hereafter subdivision (d)) applies only to "for cause" disqualifications or also to peremptory challenges. Subdivision (d)'s placement and language show that the Legislature intended it to apply only to "for cause" disqualifications.

The Legislature placed subdivison (d) in section 170.3. Each of section 170.3's other subdivisions relates exclusively to the procedure for disqualification of judicial officers "for cause." The procedure for peremptory challenges of judges, on the other hand, appears in a different statute, section 170.6. Subdivision (d) makes no reference to section 170.6, nor does section 170.6 refer to subdivision (d). Because the Legislature grouped it with the procedures governing rulings on "for cause" disqualifications, the most reasonable inference is that the Legislature intended subdivision (d)'s limitation on appellate remedies to apply exclusively to such rulings.

This inference is strongly reinforced by the language of subdivision (d). Other subdivisions of section 170.3 use the term "disqualification" and the phrase "question of disqualification" (often in conjunction with the word "determines") when referring to the procedure for removing a judge "for

cause." For example, subdivision (c)(5) of section 170.3 states that "the question of disqualification shall be heard and determined by another judge," while subdivision (c)(6) of the same section states that the judge deciding "the question of disqualification" may do so on the basis of the statement and answer filed by the parties or may set the matter for a hearing, that the judge shall permit argument at a hearing on "the question of disqualification," and that notice is to be given the presiding judge if the impartial judge "deciding the question of disqualification determines" that the judge is disqualified.

In contrast, the peremptory challenge provision, section 170.6, never uses the words "determine," "question," or "disqualification." Moreover, the reference in subdivision (d) to the "*determination of the question of disqualification*" would be an inapt and improbable description of the procedure for a peremptory challenge of a judge: because judicial removal under section 170.6 is automatic (see *People* v. *Whitfield, supra,* 183 Cal.App.3d 299, 303), a peremptory challenge presents no question of disqualification to be determined. Thus, subdivision (d)'s use of the language "determination of the question of disqualification" should be construed to apply only to rulings on disqualifications "for cause," and not to peremptory challenges.

The majority reasons that its limitation of the appellate review of rulings on peremptory challenges will eliminate "possible delay, waste, and the relitigation of issues" that occur when such rulings are reviewed on post-judgment appeal. (Maj. opn., *ante,* p. 273.) As the majority points out, public policy favors pretrial writ review because it permits the appellate court to remedy an erroneous denial of any judicial challenge, usually without the necessity of reversing a judgment. (Maj. opn., *ante,* p. 272.)[4]

I agree that public policy favors immediate writ review. That policy, however, does not empower us to rewrite a statute. (*Nott* v. *Superior Court* (1988) 204 Cal.App.3d 1102, 1106 [251 Cal.Rptr. 842].) Whether any policy is sufficiently important for a statutory mandate is a question for the Legislature, not this court. (See *People* v. *National Association of Realtors* (1981) 120 Cal.App.3d 459, 475 [174 Cal.Rptr. 728].) Because in the case of a peremptory challenge under section 170.6, the Legislature has not limited appellate review to a petition for writ of mandate filed within 10 days, the issue can be raised by defendant on this postjudgment appeal. (See Pen. Code, § 1259; *Briggs* v. *Superior Court, supra,* 215 Cal. 336, 342; *People* v.

---

[4]As the majority acknowledges, writ review under subdivision (d) would not *always* be pretrial. Here, defendant's peremptory challenge to the trial judge was denied on October 30, 1989, and her trial began that same day. Thus, even if she had filed a petition for writ of mandate within 10 days of the ruling, relief from the improper denial of her motion could not be pretrial.

*Whitfield, supra,* 183 Cal.App.3d 299, 306; *In re Christian J.* (1984) 155 Cal.App.3d 276 [202 Cal.Rptr. 54].)

## III. DEFENDANT'S PEREMPTORY CHALLENGE

Defendant contends her section 170.6 peremptory challenge against the judge assigned to preside over her trial was timely and thus should have been granted. I agree.

Section 170.6, subdivision (2) specifies the time within which a peremptory challenge must be asserted: "If directed to the trial of a cause where there is a master calendar," the peremptory challenge must be presented to the judge supervising the master calender court "not later than the time the cause is assigned for trial." But this provision cannot be interpreted to require the filing of a peremptory challenge motion *before* counsel for the moving party learns the identity of the assigned judge. (*People* v. *Bonds* (1988) 200 Cal.App.3d 1018, 1024 [248 Cal.Rptr. 5]; *People* v. *Montalvo* (1981) 117 Cal.App.3d 790, 794 [173 Cal.Rptr. 51].)

Here, the master calendar court assigned defendant's case for trial before Judge Pierson on Friday, October 27, 1989. Because the defense had not been ordered to appear on that date, neither defendant nor her counsel was present. The next court day, Monday, October 30, 1989, when defense counsel learned of the assignment, was therefore the earliest possible opportunity to present to the master calendar court defendant's peremptory challenge of Judge Pierson. Thus, defendant's peremptory challenge, presented to the master calendar court on October 30, 1989, was timely. (See *People* v. *Bonds, supra,* 200 Cal.App.3d at 1024; *People* v. *Montalvo, supra,* 117 Cal.App.3d at 794.)

When the issue of judicial removal is raised on postjudgment appeal, a determination by the reviewing court that the trial judge should have been removed requires reversal. (See *Briggs* v. *Superior Court, supra,* 215 Cal. 336, 342; *People* v. *Whitfield, supra,* 183 Cal.App.3d 299, 306.) As I have explained, defendant's peremptory challenge to Judge Pierson was timely and should have been granted. Because the issue is properly before us on postjudgment appeal, that judgment should be reversed.

Appellant's petition for a rehearing was denied February 20, 1992. Kennard, J., was of the opinion that the petition should be granted.