Filed 6/22/23; Certified for Publication 7/3/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B315243 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. NA102181 |
| v. | |
| EDUARDO HERNANDEZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Judith L. Meyer, Judge.  Affirmed.

Justin Behravesh, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Nikhil Cooper, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

We address the intersection of Penal Code sections 1203.9 and 1473.7.[1]  Appellant invoked section 1203.9 so he could be supervised on probation in the county where he permanently resided, rather than in the county where he was convicted and sentenced.  Section 1203.9 allows "full jurisdiction" to be transferred on motion by the probationer.  Section 1473.7 permits noncitizens to move to withdraw their pleas if they were unable to meaningfully understand the immigration consequences of those pleas.  Appellant filed such a motion in the court of his county of supervision, not conviction.  The question presented is whether section 1203.9 permits a probationer (or, as here, a former probationer) to file a motion to withdraw plea in the county of probation supervision, as opposed to the county of conviction.  We conclude, as did the trial court, that appellant should have filed his motion to withdraw his plea in the county where he was prosecuted, convicted, and sentenced.  Accordingly, we affirm the trial court.

## FACTUAL BACKGROUND

On August 31, 2012, in San Bernardino County Superior Court, appellant Eduardo Hernandez entered a no contest plea to one count of assault by means likely to produce great bodily injury.  He was placed on three years formal probation.  Shortly after being placed on probation, appellant was deported.  He later illegally reentered the country.  In 2014, his probation was reinstated and on June 25, 2015, the sentencing court transferred probation supervision and jurisdiction from San Bernardino County to Los Angeles County, where appellant permanently resided, pursuant to section 1203.9.

---

[1]     Undesignated statutory references are to the Penal Code.

2

On April 6, 2021, appellant filed a motion in Los Angeles County Superior Court to vacate his plea pursuant to section 1473.7. By then he had already completed his probationary sentence. On August 23, 2021, the trial court concluded it lacked jurisdiction to hear appellant's motion and directed him to refile the motion in San Bernardino County Superior Court. This timely appeal followed.

## DISCUSSION

A. **Standard of Review**

Questions of statutory interpretation are reviewed de novo. (*People v. Prunty* (2015) 62 Cal.4th 59, 71.) "The rules governing statutory construction are well settled. We begin with the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. [Citations.] To determine legislative intent, we turn first to the words of the statute, giving them their usual and ordinary meaning. [Citations.] When the language of a statute is clear, we need go no further. However, when the language is susceptible of more than one reasonable interpretation, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." (*Nolan v. City of Anaheim* (2004) 33 Cal.4th 335, 340, superseded by statute on another ground in *McCormick v. Public Employees' Retirement System* (2019) 41 Cal.App.5th 428, 436.) If we construe a statute, we must do so, if possible, to achieve harmony among its parts. (*People v. Partee* (2020) 8 Cal.5th 860, 868; *People v. Hull* (1991) 1 Cal.4th 266, 272.) We may " ' "neither insert language which has been omitted nor ignore language which has been

3

inserted." ' " (See *People v. National Automobile & Casualty Ins. Co.* (2002) 98 Cal.App.4th 277, 282.)

B.    **The Two Statutes**

Section 1473.7 permits a noncitizen to move to withdraw a plea where it is shown that error damaged the party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of the plea. (§1473.7, subd. (a)(1).) The error must also be prejudicial. (*Ibid*.) Showing prejudice under section 1473.7, subdivision (a)(1) "means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences." (*People v. Vivar* (2021) 11 Cal.5th 510, 529.)

Section 1203.9 was originally enacted in 1935. (Stats. 1935, ch. 604, § 10.) Currently, subdivision (a)(1) provides: "[W]henever a person is released on probation or mandatory supervision, the court, upon noticed motion, shall transfer the case to the superior court in any other county in which the person resides permanently, with the stated intention to remain for the duration of probation or mandatory supervision, unless the transferring court determines that the transfer would be inappropriate and states its reasons on the record." (§1203.9, subd. (a)(1).) Subdivision (a)(3) requires the transferring court to determine the amount of restitution before the transfer or to complete the determination as soon as practicable after the transfer. "In all other aspects, except as provided in subdivision (d) and (e), the court of the receiving county shall have full jurisdiction over the matter upon transfer." (*Id.,* subd. (a)(3).) Subdivision (b) provides that "the receiving county shall accept

4

the entire jurisdiction over the case effective the date that the transferring court orders the transfer." (*Id.,* subd. (b).)

In amending the statute in 2009, the Legislature directed the Judicial Council to promulgate rules to implement section 1203.9. (Stats. 2009, ch. 588, § 1.) Those rules set out the factors a transferring court must consider when determining whether transfer is appropriate. These factors include (1) the permanency of the supervised person's residence; (2) the availability of appropriate programs for the supervised person, including substance abuse, domestic violence, sex offender, and collaborative court programs; (3) whether transfer would impair the ability of the receiving court to determine restitution amounts or impair the ability of the victim to collect court-ordered restitution; and (4) victim issues such as whether transfer would impair the ability of the court to properly enforce protective orders. (Cal. Rules of Court, rule 4.530(f).) The rules provide that upon transfer, "the receiving court must accept the entire jurisdiction over the case." (*Id.,* (g)(3).) "[T]he transferring court must transmit the entire original court file to the receiving court in all cases in which the supervisee is the sole defendant," or, in a case with multiple defendants, "certified copies of the entire original court file." (*Id.,* (g)(5).) The probation officer of the transferring county "must transmit, at a minimum, any court orders, probation or mandatory supervision reports, and case plans to the probation officer of the receiving county." (*Id.,* (g)(7).)

C.     **Analysis**

Here, it is the meaning of subdivision (a)(3) of section 1203.9 which is at issue: "the court of the receiving county shall have full jurisdiction over the matter upon transfer." (§1203.9,

5

subd. (a)(3).) The question is whether the phrase "full jurisdiction" is meant to remove the authority of the original sentencing court from everything associated with the case, or whether "full jurisdiction" refers only to matters relating to the probationary sentence.

We conclude that the phrase is ambiguous and the words of the statute do not resolve the issue. Therefore, some legislative history is in order to aid in interpreting the statute. Under the original version of section 1203.9, courts could agree to perform "courtesy supervision" of a probationer without accepting jurisdiction over the probationer as well. (*People v. Klockman* (1997) 59 Cal.App.4th 621, 626.) "Courtesy supervision" meant the receiving court would monitor the individual's progress on probation and report that progress back to the original sentencing court.[2] If the terms and conditions of probation needed to be modified, the original sentencing court retained authority to make changes. If a probationer was in violation of the terms of the grant of probation, the sentencing court handled revocations, reinstatements, and termination of probation. Thus two counties were involved in the probation process at the same time.

The purpose of later amending section 1203.9 in 2009 was to eliminate the concurrent jurisdiction of two counties over a defendant on probation. (*People v. Klockman, supra,*

---

[2] Courtesy supervision is "[s]upervision by the correctional agency of one jurisdiction, of a person placed on probation by a court . . . in another jurisdiction, by informal agreement between agencies." (U.S. Dept. of Justice, Bureau of Justice Statistics, Dict. of Crim. Justice Data Terminology (2d ed. 1981) p. 58.)

59 Cal.App.4th at p. 627.)[3]  Indeed, according to the history of the amending legislation Senate Bill. No. 431, section 1203.9 was amended to end the practice of informal courtesy supervision of probationers.  Under the heading "Need for This Bill," the author wrote: "Current law results in a significant risk to public safety with thousands of adult probationers being supervised ineffectively by Probation Departments outside of their County of Residence. [¶] Under current law, California County Probation Departments are responsible for the supervision of adult offenders placed on probation by the Superior Court.  Most of those placed on probation reside in the County where the crime, prosecution, and grant of probation occurred.  This means that the Probation Department supervises the Probationer residing in the Probation Department's geographical jurisdiction (County),

---

[3]  "The purpose of this bill is to require that (1) when a person is released on probation, the sentencing court shall transfer the entire jurisdiction of the case to the county in which that person permanently resides, unless the court determines on the record that the transfer would not be appropriate; (2) the county of the probationer's residence accept the entire jurisdiction over the case, unless that county determines the probationer does not intend to reside within the county throughout the period of probation; (3) these same provisions be applied to cases where the person is placed on probation for the purpose of drug treatment, pursuant to Proposition 36; and (4) the Judicial Council adopt rules providing factors for the court's consideration when determining the appropriateness of transfer." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 431 (2009–2010 Reg. Sess.) as amended April 22, 2009, pp. 1–2.)  "In essence, this bill would eliminate the option for the receiving county of accepting the probationer on 'courtesy supervision' without accepting full jurisdiction over the case." (*Id*. at p. 5.)

7

which facilitates probation monitoring and supportive services that promote public safety. [¶] However, thousands of adult probationers reside in a different County than the probation department responsible for their supervision. Some of these adult probationers are concurrently under the wasteful, duplicative probation supervision of multiple probation departments. <u>Probation departments do not have the capacity to provide for effective supervision of adult probationers living in other counties</u>. [¶] SB 431 would establish the Probation Department of the adult probationer's County of residence as the Probation Department responsible for probation supervision." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 431, *supra*, as amended April 22, 2009, com. pp. 4–5.) The author went on: "One aspect of current law that has apparently resulted in inconsistent practices in different counties is the fact that 'courtesy supervision' is not defined. This leaves some ambiguity over which county may issue a warrant for the probationer's arrest if he or she is found to be in violation of the terms and conditions of probation. [¶] The sponsors acknowledge that there is not unanimity of opinion among counties over how to resolve this issue. Some counties do not want to accept cases involving their residents who are convicted of crimes in other counties. Other counties do not want to relinquish authority over persons convicted and sentenced in their courts to the probationer's county of residence. As to the latter concern, the bill allows the sentencing court to retain jurisdiction if it makes findings on the record that transfer would be inappropriate." (*Id.* at pp. 5–6.)

The Report of the Assembly is more elucidating. "<u>Elimination Courtesy Supervision</u>: Under current law, when a defendant is granted probation he or she is placed on probation in

8

the county where the conviction occurred. In most cases, this rule makes perfect sense. However, when the offense occurs in a county in which the defendant does not intend to permanently reside, a number of problems occur. As a general rule, defendants placed on probation are expected to participate in programs, treatment, community service and generally work when appropriate. If the defendant permanently resides in a county other than the county in which he or she was convicted, requiring him or her to participate in probation in the county of conviction is counter-productive. [¶] Currently, the county in which the defendant was convicted maintains jurisdiction over the probationer during the period of probation. However, the attorney for the defendant or the county probation department may require a 'courtesy supervision' of the defendant's county of permanent residence while he or she is on probation. Under this loosely defined 'courtesy supervision' system, the county where the defendant was convicted maintains jurisdiction over the defendant, but he or she is allowed to return to the county of permanent residency and is, in fact, monitored by the probation department in the county of residence. [¶] There are no uniform rules for the accepting or granting of 'courtesy supervision' by the county of permanent residence. The county of residence has sole authority to accept or deny the transfer for any reason. [¶] This bill eliminates the need for courtesy supervision by requiring that the county of permanent residence accept the transfer of jurisdiction upon that counties permanent residence *for the period of probation*." (Assem. Com. on Public Safety, Rep. on Sen. Bill No. 431 (2009–2010 Reg. Sess.) as amended June 4, 2009, com. p. 3, italics added; *People v. Adelmann* (2018) 4 Cal.5th 1071, 1080.)

9

As the legislative history sets out, "this bill creates a uniform rule that will require a county to accept jurisdiction over a probationer who permanently resides in that county, whether or not the defendant was convicted in the county of permanent residence. This will aid a defendant in the successful completion of probation and re-integration into the community in which he or she intends to permanently reside. A probationer participating in the rehabilitation program will do so in his or her own home county. An offender required to work while on probation will be employing himself or herself in the county in which he or she intends to permanently reside. A probationer will not have to relocate to the county in which he or she committed the offense and then relocate again at the conclusion of probation to return to his or her county of permanent residence." (Assem. Com. on Public Safety, Rep. on Sen. Bill No. 431, *supra*, as amended June 4, 2009, com. p. 3.)

This legislative history persuades us that section 1203.9 was enacted solely to effectuate more streamlined and effective supervision of probationers statewide by ensuring that the court of their county of residence is empowered to supervise and adjudicate issues arising as a result of the probationary grant. It was not intended to disempower the sentencing court from all post-sentencing issues that may arise as a result of the conviction and sentence.

Next, we turn to section 1473.7 for interpretative assistance. This statute does not specify where a motion to withdraw the plea must be filed. Generic motions to withdraw pleas are generally heard by the original trial court. (*People v. Batt* (1994) 24 Cal.App.4th 1044, 1048 [motion to withdraw a plea must be heard by the same court.]; *People v. Valdez* (1995)

10

33 Cal.App.4th 1633, 1638 ["same court" does not mean same judicial officer].)

Notably, if a motion under section 1473.7 were granted and the plea were withdrawn, criminal proceedings would normally re-commence in the original county of prosecution. In our view, that alone would dictate that the motion be filed in the county where the charges were originally filed. There is no point in starting the section 1473.7 process in one county only to have the re-commenced prosecution finish in another county. Neither judicial economy nor equity is fostered by such a bifurcation of labor.

A motion presented under section 1473.7 is completely disconnected from the post-sentencing status of the moving party. It is focused on what happened at and around the time the plea was taken. The original prosecuting agency is most knowledgeable to present the People's position on the motion, given its familiarity with the facts of the case and any county-specific or case-specific plea procedures that might bear on the adjudication of the motion. The original court would also be best positioned to evaluate the arguments of both parties given its knowledge of local practices and customs, to the extent adjudication of the motion requires such analysis. And if former defense counsel, the former prosecutor, and the original judicial officer who presided over the plea and sentencing are still available, common sense dictates that their familiarity with the circumstances surrounding the plea would properly inform the disposition of the motion.

Nonetheless, appellant argues that section 1203.9 supersedes section 1473.7 and confers full jurisdiction over all aspects of the criminal case ad infinitum. This notion of

11

everlasting jurisdiction over all issues arising from the conviction does not comport with the legislative history cited above, which conferred "jurisdiction" in the receiving court for the purpose of ensuring effective, non-duplicative, and efficient probation supervision. Once probation supervision terminates, jurisdiction under section 1203.9 should end as well. Indeed, the Assembly report set out above makes reference to jurisdiction being transferred for the "period of probation." This supports the notion that the legislation was all about probation supervision and nothing else. There is no reason, given the purpose of the statute, for the provisions of section 1203.9 to control the validity of the underlying conviction itself.

As set out above, despite its "full jurisdiction" language, section 1203.9 itself reserves calculation of restitution to the original sentencing court. (§ 1203.9, subd. (a)(3).) "Full jurisdiction," then, is not full. It also governs transfers only for persons intending to "remain for the duration of probation." (*Id.,* subd. (a)(1).) This is another indication that "full jurisdiction" was intended to apply to all issues arising out of out-of-county supervision and nothing else.

Pertinently, section 1203.9 does not govern other challenges to final convictions. For example, section 1054.9 post-conviction discovery motions must be filed in the trial court which rendered the underlying judgment, even though, as with section 1473.7, there is no specific jurisdictional provision. (*In re Steele* (2004) 32 Cal.4th 682, 691.) Where, as here, the motion is so tied to what occurred in the original prosecution of the charges, the involvement of the original trial court has been deemed too significant to ignore. (*Id.* at p. 692.)

12

The same is true for section 1473.7 motions challenging the validity of convictions by plea.  These motions are too tied to the facts, decisions, circumstances, and people involved in the original prosecution to be transferred to an uninvolved trial court just because that court happened to supervise the moving party's probationary term.  (See *People v. Vivar, supra,* 11 Cal.5th at pp. 527–534.)

Finally, that appellant had completed probation when he filed the motion is an alternative ground for rejecting his contention that section 1203.9 must control jurisdiction.  Section 1203.9 was meant to streamline the process of supervising probationers who do not reside permanently in the county of conviction.  There is no evidence that it was also meant to upend the original trial court's jurisdiction over non-probation aspects of a conviction and sentence.  When appellant's probation supervision ended, he reverted to the status of any other convicted person not on probation.  As such, he is appropriately subject to the rules governing that demographic.

## DISPOSITION

The order is affirmed.


                              STRATTON, P. J.


We concur:




WILEY, J.




VIRAMONTES, J.


14

Filed 7/3/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>EDUARDO HERNANDEZ,<br><br>        Defendant and Appellant. | B315243<br><br>Los Angeles County<br>Super. Ct. No. NA102181<br><br>ORDER CERTIFYING OPINION<br>FOR PUBLICATION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion in the above-entitled matter filed on June 22, 2023, was not certified for publication in the Official Reports.  For good cause, it now appears that the opinion should be published in the Official Reports.

[There is no change in the judgment.]

_____

STRATTON, P. J.                WILEY, J.                VIRAMONTES, J.