# IN THE SUPREME COURT OF CALIFORNIA

NORTH AMERICAN TITLE COMPANY et al.,
Petitioners,

v.

THE SUPERIOR COURT OF FRESNO COUNTY,
Respondent;

CAROLYN CORTINA et al.,
Real Parties in Interest.

S280752

Fifth Appellate District
F084913

Fresno County Superior Court
07CECG01169

October 28, 2024

Chief Justice Guerrero authored the opinion of the Court, in which Justices Corrigan, Liu, Kruger, Groban, Jenkins, and Evans concurred.

NORTH AMERICAN TITLE CO. v. SUPERIOR COURT

S280752


Opinion of the Court by Guerrero, C. J.


This case requires us to interpret various statutes governing the disqualification of judges. In particular, we consider what we refer to as a timeliness requirement set forth in Code of Civil Procedure section 170.3, subdivision (c)(1) (section 170.3(c)(1)),[1] and a nonwaiver provision set forth in section 170.3, subdivision (b)(2) (section 170.3(b)(2)).

The timeliness requirement of section 170.3(c)(1) provides that a party who seeks to disqualify a trial court judge by filing a verified statement of disqualification must do so "at the earliest practicable opportunity after discovery of the facts constituting the ground for disqualification." The nonwaiver provision of section 170.3(b)(2) provides that, notwithstanding a party's general ability to waive a disqualification, "[t]here shall be no waiver of disqualification if the basis therefor" falls into one of two categories, one of which is that "[t]he judge has a personal bias or prejudice concerning a party" (§ 170.3, subd. (b)(2)(A)).

We granted review to decide whether the nonwaiver provision precludes application of the timeliness requirement when a party alleges that a judge is disqualified due to bias or prejudice concerning a party. The Court of Appeal held that it

---

[1] All further statutory references are to the Code of Civil Procedure.

does. (See *North American Title Co., Inc. v. Superior Court* (2023) 91 Cal.App.5th 948, 978 (*North American Title*).) According to the Court of Appeal, the nonwaiver provision must be read "to prohibit all forms of waiver, including implied waiver due to untimeliness." (*Id.* at p. 982.) Under the court's reading of the statute, a party alleging bias or prejudice cannot "waive[]" its right to seek judicial disqualification (*ibid.*), even when the claim is asserted long past the point of "discovery of the facts constituting the ground for disqualification" and, for that reason, is not required to assert its claim of judicial bias "at the earliest practicable opportunity." (§ 170.3(c)(1).)

We disagree with the Court of Appeal's interpretation of the statute. It conflates the concepts of waiver and forfeiture, and it extends the statute's prohibition on waiver to scenarios where forfeiture based on failure to comply with the timeliness requirement may properly be found. As the statutory text, structure, legislative history, and case law make clear, the nonwaiver provision of section 170.3(b)(2) applies only in circumstances in which "a judge [has] determine[d] himself or herself to be disqualified" and, absent an explicit waiver of disqualification by the parties, would recuse himself or herself from the proceedings. (§ 170.3, subds. (a)(1) & (b)(1).) We thus agree with appellants and Real Parties in Interest Carolyn Cortina et al. (Real Parties in Interest) that the nonwaiver provision is limited to the process of judicial self-disqualification, and it is inapplicable when *a party* seeks disqualification by filing a written verified statement of disqualification. When a party seeks disqualification, the statute's timeliness requirement contemplates that the litigant may forfeit the right to seek disqualification by failing to file a statement of disqualification "at the earliest practicable

opportunity after discovery of the facts constituting the ground for disqualification." (§ 170.3(c)(1).) The statute's nonwaiver provision has no effect on the separate issue of forfeiture in this context.

The Legislature quite reasonably could have enacted statutory language that treats judicial self-disqualification differently from party-initiated disqualification attempts. Judicial self-disqualification involves an *admission* of bias or prejudice, which the Legislature could reasonably decide was not waivable by the parties. A party-initiated disqualification attempt, by contrast, involves only an *allegation* of bias or prejudice. It does not necessarily mean the judge is actually biased or prejudiced. The Legislature could reasonably have placed a timeliness requirement on such party-initiated statements of judicial qualification to encourage parties to bring possible conflicts to the court's attention promptly and avoid potential gamesmanship and delay. On the other hand, the Legislature may have been less concerned about the timeliness of judicial self-disqualification because such disqualification is compelled by a judicial officer's ethical duties and does not pose the same risk of, or incentive for, misuse of the disqualification process. In sum, the timeliness requirement imposes a reasonable obligation on parties to expeditiously advance all known disqualification issues. It encourages the prompt and efficient adjudication of such claims, and it ensures that challenges to a judge's impartiality are subject to careful and deliberate scrutiny.

We therefore hold section 170.3(c)(1)'s timeliness requirement — that a statement of disqualification filed by a party "shall be presented at the earliest practicable opportunity" — applies even when the alleged basis for

disqualification is that "[t]he judge has a personal bias or prejudice concerning a party" (§ 170.3, subd. (b)(2)(A)). On this basis, we reverse the Court of Appeal's judgment and remand the case for that court to consider in the first instance whether the statement of disqualification filed by North American Title Company (Petitioner) was timely.

This interpretation of sections 170.3(c)(1) and 170.3(b)(2) makes it unnecessary for us to examine a secondary issue raised in the petition for review: whether "section 170.2's provision that it is not grounds for disqualification that a judge 'in any capacity expressed a view on a legal or factual issue presented in the proceeding,' [is] inapplicable if, on review, an appellate court determines such issue was not 'properly' before the [trial] court." Because the Court of Appeal has not yet considered whether Petitioner's statement of disqualification was presented in a timely manner, this question is premature for our review. (Accord, *Penthouse International, Ltd. v. Superior Court* (1982) 137 Cal.App.3d 975, 982 (*Penthouse*) ["Timeliness of the statement must be considered; if it was not presented 'at the earliest practicable opportunity,' . . . none of the other issues need be reached"].) We thus express no view on this issue.

## I.    BACKGROUND

The underlying litigation is a wage-and-hour class action that Real Parties in Interest instituted against Petitioner, their employer, in 2007. (*North American Title*, *supra*, 91 Cal.App.5th at p. 961.) In 2016, the trial court judge who Petitioner is presently seeking to disqualify found Petitioner liable after a bench trial. (*Ibid*.) In 2022, after several years of assessing individual damages, the judge entered judgment in the amount of approximately $43.5 million. (*Ibid*.)

While litigation in the wage-and-hour case was ongoing, Petitioner underwent a series of corporate restructurings and name changes. (*North American Title, supra,* 91 Cal.App.5th at pp. 961–962.) After learning of these transactions, Real Parties in Interest filed a motion for leave to amend their complaint to add "North American Title Company, Inc." and "CalAtlantic Title, Inc." as named defendants.[2] Real Parties in Interest maintained the corporate name changes were part of a strategy to enable Petitioner to evade a judgment. As Real Parties in Interest argued, "After liability was established, and a substantial judgment is all but certain, [Petitioner] appears to have devised an elaborate shell game to transfer its assets, silo its liability in an empty shell, and thereby insulate itself from liability . . . ."

On June 24, 2020, the trial court held a hearing on Real Parties in Interest's motion for leave to amend the complaint. At this hearing, the court said: "You know, just at the base of it all, it certainly feels like we are all in a carnival and we're playing a shell game with a whole bunch of shells, and only one nut. It's — you know, again, from the face of it, it doesn't even appear that [Petitioner] is trying to hide it very much, you know, they are playing a shell game on purpose. They've got a big potential liability, and they want to try to avoid it." The court made similar comments during a hearing on June 18, 2021.

---

[2] "CalAtlantic Title, Inc." was the then-current name of Petitioner, whereas "North American Title Company, Inc." referred, not to Petitioner, but to the corporation that bought the right to use Petitioner's original name. (*North American Title, supra,* 91 Cal.App.5th at pp. 962–963.)

In late October 2021, after it had been served with summons, one of the additional named defendants in the underlying proceeding (Doma Title, which is not a party to this proceeding) sought to disqualify the trial judge for cause based on the court's comments described above. (*North American Title*, *supra*, 91 Cal.App.5th at p. 969.) Doma Title argued that these comments showed the judge had "prejudged [its] liability." Citing section 170.3(c)(1), Doma Title explained that its statement of disqualification was filed " 'at the earliest practicable opportunity after discovery of the facts constituting the ground for disqualification.' " The judge filed an answer to the statement of disqualification. In his answer, the judge stated the comments that Doma Title contended were evidence of bias against it were "directed at [Petitioner] and . . . not . . . at Doma."

Real Parties in Interest subsequently obtained leave to dismiss Doma Title from the action "so that [they] could proceed to attempt to obtain a final judgment in the matter." (*North American Title*, *supra*, 91 Cal.App.5th at p. 970.) Doma Title's statement of disqualification, which had been referred to another judge, was denied as moot following the dismissal. (*Id.* at p. 971.)

On August 18, 2022, after Doma Title failed to disqualify the trial judge, Petitioner filed its own verified statement of disqualification. Petitioner relied on the same comments made in 2020 and 2021 that Doma Title had recited in its earlier statement of disqualification. (*North American Title*, *supra*, 91 Cal.App.5th at p. 972.) Petitioner also noted that in responding to Doma Title's statement of disqualification, the court clarified its comments were directed at Petitioner (and not Doma Title). Petitioner asserted two statutory grounds for

disqualification: (1) "A person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial" (§ 170.1, subd. (a)(6)(A)(iii)); and (2) "Bias or prejudice toward a lawyer in the proceeding" (§ 170.1, subd. (a)(6)(B)).

The trial judge struck Petitioner's statement of disqualification as untimely. It was unpersuaded by Petitioner's argument that its statement of disqualification was filed at the earliest practicable opportunity — an argument Petitioner continues to pursue in this court.

Petitioner promptly sought writ review in the Court of Appeal. Without reaching the question of whether Petitioner's statement was timely, the Court of Appeal held that the timeliness requirement did not apply to Petitioner's statement. According to the Court of Appeal, "a statement of disqualification for bias, prejudice, or appearance of impartiality cannot be found to be impliedly waived as untimely under section 170.3, subdivision (b)(2)," the statute's nonwaiver provision. (*North American Title*, *supra*, 91 Cal.App.5th at p. 960.) The court thus granted writ relief, ordering the trial judge to "reinstate [Petitioner's] verified statement of disqualification." (*Id.* at p. 994.)

We granted review.

## II.   ANALYSIS

Determining the scope of section 170.3(c)(1)'s timeliness requirement presents "a question of statutory construction, which we review de novo." (*Turner v. Victoria* (2023) 15 Cal.5th 99, 111.)

" ' " 'When we interpret a statute, "[o]ur fundamental task . . . is to determine the Legislature's intent so as to

effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. . . ." . . . "Furthermore, we consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." ' " ' " (*Los Angeles Unified School Dist. v. Superior Court* (2023) 14 Cal.5th 758, 767–768 (*Los Angeles Unified*).)

## A. Overview of Judicial Disqualification Statutes

Under section 170, "A judge has a duty to decide any proceeding in which he or she is not disqualified." This "section serves to remind judges of their duty to hear cases which are controversial and might subject them to public disapproval as well as to protect them from public criticism by a clear statement of their responsibility." (*United Farm Workers of America v. Superior Court* (1985) 170 Cal.App.3d 97, 103.)

Section 170.1 sets forth nine grounds for disqualification. These include the two bases that Petitioner relies upon in this matter — an independent observer might reasonably doubt the judge's impartiality (§ 170.1, subd. (a)),[3] and a judge has a bias or prejudice against a lawyer in the proceeding (§ 170.1, subd.

---

[3] Section 170.1, subdivision (a) ["A judge shall be disqualified if . . . [¶] (6)(A) For any reason: [¶] . . . [¶] (iii) A person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial"].

(a)(6)(B)).[4]  A judge is likewise disqualified if "[t]he judge served as a lawyer in the proceeding, or in any other proceeding involving the same issues he or she served as a lawyer for a party in the present proceeding or gave advice to a party in the present proceeding upon a matter involved in the action or proceeding" (§ 170.1, subd. (a)(2)(A))[5] and when "[t]he judge has personal knowledge of disputed evidentiary facts concerning the proceeding" (§ 170.1, subd. (a)(1)(A)).[6]

Section 170.3 specifies procedures that must be followed when a trial judge is potentially disqualified under one or more of the statutory grounds provided in section 170.1.  Among its provisions, section 170.3, subdivision (a)(1) directs that "[i]f a judge determines himself or herself to be disqualified, the judge shall notify the presiding judge of the court of his or her recusal and shall not further participate in the proceeding . . . unless his or her disqualification is waived by the parties as provided in subdivision (b)."  This language is the statute's first reference to waiver, and it connects the possibility of a waiver to a judge's own determination that he or she is disqualified.

Two subsequent subdivisions of section 170.3 — subdivisions (b) and (c)(1) — are the provisions most pertinent

---

[4]  Section 170.1, subdivision (a)(6)(B) ["Bias or prejudice toward a lawyer in the proceeding may be grounds for disqualification"].

[5]  Section 170.1, subdivision (a)(2)(A); see also *id.*, subdivision (a)(2)(B) [defining when "[a] judge shall be deemed to have served as a lawyer in the proceeding"].

[6]  Section 170.1, subdivision (a)(1)(A); see also *id.*, subdivision (a)(1)(B) [providing that a judge is deemed to have personal knowledge if the judge, or a close relation of the judge, is likely to be "a material witness" in the proceeding].

to our analysis. Section 170.3, subdivision (b)(1) states: "A judge who determines himself or herself to be disqualified after disclosing the basis for his or her disqualification on the record may ask the parties and their attorneys whether they wish to waive the disqualification, except where the basis for disqualification is as provided in paragraph (2)." "[P]aragraph (2)" (*ibid*) — or section 170.3(b)(2), the nonwaiver provision — provides: "There shall be no waiver of disqualification if the basis therefor is either of the following: [¶] (A) The judge has a personal bias or prejudice concerning a party. [¶] (B) The judge served as an attorney in the matter in controversy, or the judge has been a material witness concerning that matter."

In relevant part, section 170.3(c)(1) states: "If a judge who should disqualify himself or herself refuses or fails to do so, any party may file with the clerk a written verified statement objecting to the hearing or trial before the judge and setting forth the facts constituting the grounds for disqualification of the judge. The statement shall be presented at the earliest practicable opportunity after discovery of the facts constituting the ground for disqualification."[7] Section 170.4, subdivision (b)

---

[7] Although section 170.3(c)(1) was enacted in 1984, the requirement that a litigant seeking to disqualify a judge must act at "the earliest practicable opportunity" has been in place for almost a century. As early as 1927, a predecessor statute to section 170.3(c)(1) "was amended to provide that 'The statement of a party objecting to the judge on the ground of his disqualification, shall be presented at the earliest practicable opportunity, after his appearance and discovery of the facts constituting the ground of the judge's disqualification, and in any event before the commencement of the hearing of any issue of fact in the action or proceeding before such a judge.' "

then provides the consequence for failing to file a statement of disqualification in a timely manner, specifying that "if a statement of disqualification is untimely filed . . . the trial judge against whom it was filed may order it stricken."[8]  In short, under its plain terms, the timeliness requirement of section 170.3(c)(1) applies to party-initiated disqualification attempts. As we shall explain, the nonwaiver provision of section 170.3, subdivision (b) has no effect on such party-initiated efforts.

## B. Statutory Text and Structure

In considering whether a party attempting to disqualify a trial judge for alleged lack of impartiality is exempt from section 170.3(c)(1)'s requirement that a verified statement of disqualification is to be filed "at the earliest practicable opportunity," we look first to the text of the statute, read in context.  (See, e.g., *Los Angeles Unified*, *supra*, 14 Cal.5th at

(*Caminetti v. Pac. Mut. L. Ins. Co.* (1943) 22 Cal.2d 386, 389–390 (*Caminetti*); see Stats. 1927, ch. 744, § 1, p. 1404.)  This earlier version of the statute also included a provision for waiver of disqualification by written stipulation.  (See Stats. 1927, ch. 744, § 1, p. 1405 ["The disqualification mentioned in either subdivision two or three of this section [which concerned a court's being related to or having prior involvement with a party] may be waived by the written stipulation of the parties"].)

[8]  For a time prior to the enactment of this provision in 1984, a challenged judge did not have the authority to strike a statement of disqualification for untimeliness.  As the Court of Appeal explained, from 1981 to 1984, a judge against whom a statement of disqualification has been filed could not strike the statement "under any circumstance."  (*North American Title*, *supra*, 91 Cal.App.5th at p. 975.)  Instead, even "threshold questions [such] as the timeliness of the disqualification statement" had to be referred to another judge (who could then deny the disqualification motion as untimely).  (*Penthouse*, *supra*, 137 Cal.App.3d at pp. 980–981; see also *id*. at p. 982.)

pp. 767–768; *Curle v. Superior Court* (2001) 24 Cal.4th 1057, 1063 (*Curle*); *People v. Hull* (1991) 1 Cal.4th 266, 271 (*Hull*).)

On its face, section 170.3(c)(1)'s timeliness requirement applies to all "written verified statement[s]" of disqualification. (§ 170.3(c)(1).) The provision declares that when a party seeks to disqualify a judge by filing a written verified statement of disqualification, "[t]he statement" must be presented at the "earliest practicable opportunity." (*Ibid.*) Section 170.3(c)(1) recognizes no exceptions to this rule. Under its plain terms, then, section 170.3(c)(1)'s timeliness requirement does not exclude instances in which it is alleged as a ground of disqualification that a judge "has a personal bias or prejudice concerning a party" (§ 170.3, subd. (b)(2)(A)) or "served as an attorney in the matter in controversy, or . . . has been a material witness concerning that matter" (§ 170.3, subd. (b)(2)(B)). Similarly, the Legislature did not create any exceptions in specifying that a challenged judge may strike an untimely statement of disqualification (§ 170.4, subd. (b)).[9]

---

[9] Petitioner maintains that section 170.4, subdivision (b) does not apply when a party seeks disqualification based on one of the enumerated grounds in section 170.3(b)(2). According to Petitioner, "[i]f the Legislature wanted [s]ection 170.4(b) to apply not withstanding [s]ection 170.3(b)(2), it would have expressly said so as it did when it stated that [s]ection 170.4(b) operated '[n]otwithstanding paragraph (5) of subdivision (c) of [s]ection 170.3." Petitioner's reliance on these statutes is misplaced. Section 170.4 subdivision (b) logically states that it applies "[n]otwithstanding" section 170.3, subdivision (c)(5), because allowing a challenged trial judge to strike an untimely disqualification motion is plainly contrary to section 170.3, subdivision (c)(5)'s command that a challenged judge "shall not pass upon his or her own disqualification." By contrast, section

Rather than focusing on the text of section 170.3(c)(1), the Court of Appeal instead relied primarily on the nonwaiver provision of section 170.3(b)(2). The Court of Appeal found it instructive that "the language of section 170.3, subdivision (b)(2) unambiguously places no limitation on the type of waiver" to which it applies. (*North American Title*, *supra*, 91 Cal.App.5th at p. 981.) "Had the Legislature wanted to limit the application of section 170.3, subdivision (b)(2) to express waiver," the court reasoned, "it could have included clarifying language to that effect. It did not." (*Ibid.*) The court thus concluded that the nonwaiver provision "shall be interpreted to indicate [the Legislature's] intent to prohibit all forms of waiver, including implied waiver due to untimeliness." (*Id.* at p. 982.)

We agree that the text and structure of section 170.3, subdivision (b) are especially insightful to the question before us. However, they do not support the Court of Appeal's interpretation that section 170.3(b)(2)'s nonwaiver provision extends beyond the *written* waiver process specified in section 170.3, subdivision (b)(1). As noted, section 170.3, subdivision (b)(1) states: "A judge who determines himself or herself to be disqualified . . . may ask the parties and their attorneys whether they wish to waive the disqualification . . . . A waiver of disqualification shall recite the basis for the disqualification, and is effective only when signed by all parties and their attorneys and filed in the record." The requirement that a "waiver of disqualification" must be "signed by all parties and their attorneys" and "filed in the record" makes clear that the "waiver of disqualification" must be a *written*, and therefore

170.3(b)(2) is not facially inconsistent with a judge's ability to strike certain statements of disqualification.

*express*, waiver. (*Ibid.*) Section 170.3(b)(2) then repeats the same "waiver of disqualification" terminology used in section 170.3 subdivision (b)(1). (§ 170.3(b)(2) ["There shall be no waiver of disqualification if the basis therefor is either of the following"].)

" 'It is elementary that, absent indications to the contrary, "a word or phrase . . . accorded a particular meaning in one part or portion of the law, should be accorded the same meaning in other parts or portions of the law . . . ." [Citation.]' " (*Curle*, *supra*, 24 Cal.4th at p. 1067; see also *City of Los Angeles v. County of Los Angeles* (1989) 216 Cal.App.3d 916, 924 ["Where the same term or phrase is used in a similar manner in two related statutes concerning the same subject, the same meaning should be attributed to the term in both statutes unless countervailing indications require otherwise"].) Here, section 170.3, subdivision (b)(1) and section 170.3(b)(2) concern "the same subject." (*City of Los Angeles*, at p. 924; see also *People v. Partee* (2020) 8 Cal.5th 860, 868.) They were enacted at the same time, within the same legislative measure. (See Stats. 1990, ch. 910, § 1, p. 3858 [enacting Sen. Bill No. 2316 (1989–1990 Reg. Sess.)]; see also *Partee*, at p. 868 [noting that the two relevant provisions were enacted in the same year "in the same title"].) And they were placed immediately next to each other in the code, with section 170.3, subdivision (b)(1) expressly referring to section 170.3(b)(2). (See, e.g., *People v. Valencia* (2017) 3 Cal.5th 347, 381 (*Valencia*) (conc. opn. of Kruger, J.) ["The natural inference is that when the very next subdivision of the statute [uses a certain phrase], . . . [it] uses the phrase in the same way [as the prior subdivision]"]; *People v. Gonzales* (2017) 2 Cal.5th 858, 869 ["That the shoplifting statute expressly mentions the burglary statute and uses the

same term, 'larceny,' makes plain that the electorate intended 'larceny' to have the same meaning in both provisions"].) Thus, contrary to the Court of Appeal's assertion, the language of section 170.3(b)(2), read in context with section 170.3, subdivision (b)(1), indicates that the Legislature intended the phrase " 'waiver of disqualification' " in section 170.3(b)(2) to refer to "express waiver" (*North American Title*, *supra*, 91 Cal.App.5th at p. 981) — or more precisely, the express *written* waiver referenced in the previous subdivision.

As further indication that section 170.3 reflects a coherent statutory scheme in which waiver of disqualification plays a specific role, we note that section 170.3, subdivision (b)(1) includes a carve-out provision that explicitly references subdivision (b)(2). Section 170.3, subdivision (b)(1) directs that a judge may ask the parties whether they wish to waive a self-disclosed disqualification *except where the basis for disqualification is as provided in paragraph (2).*" (§ 170.3, subd. (b)(1), italics added.) In contrast, the procedures governing party-initiated disqualifications reside in a separate subdivision (§ 170.3, subd. (c)) that requires written verified statements to be filed "at the earliest practicable opportunity after discovery of the facts constituting the ground for disqualification" (§ 170.3(c)(1)). As discussed, neither section 170.3(c)(1) nor section 170.4, subdivision (b), the provision that authorizes a challenged judge to strike a statement of disqualification on timeliness grounds, places any limitations on the scope of the timeliness requirement. The absence of any such limitation in either of those statutes is particularly striking when compared to the carve-out language that limits the application of section 170.3, subdivision (b)(1). If the Legislature had intended to excuse the timeliness requirement when the basis for

disqualification falls within the categories described in subdivision (b)(2), we may expect that it would have expressly stated as much, just as it did in subdivision (b)(1).

In addition, the statutory structure supports Real Parties in Interest's argument that the nonwaiver provision in section 170.3(b)(2) is concerned only with the process of judicial self-disqualification. (See, e.g., *Valencia, supra*, 3 Cal.5th at p. 361 ["the *location* of the provision in question . . . is informative"]; *Hull, supra*, 1 Cal.4th at p. 272 [stating that a certain statutory interpretation of the provisions governing judicial disqualification is supported by "[a]n examination of the framework of the disqualification statutes"].) Notably, section 170.3(b)(2) is surrounded by provisions that address circumstances in which a judge has decided that he or she is disqualified.

Section 170.3(b)(2) is preceded by section 170.3, subdivision (a) and section 170.3, subdivision (b)(1), which are both concerned with situations in which "a judge determines himself or herself to be disqualified." (§ 170.3, subds. (a)(1) ["If a judge determines himself or herself to be disqualified, the judge shall notify the presiding judge of the court of his or her recusal and shall not further participate in the proceeding"], (b)(1) ["A judge who determines himself or herself to be disqualified after disclosing the basis for his or her disqualification on the record may ask the parties and their attorneys whether they wish to waive the disqualification"].)

Similarly, section 170.3(b)(2) is immediately followed by section 170.3, subdivision (b)(3), which is applicable only where "[a] judge . . . determines himself or herself to be disqualified" and so may be seeking a waiver of disqualification. (§ 170.3,

subds. (a)(1) & (b)(1).)  Section 170.3, subdivision (b)(3) states: "The judge shall not seek to induce a waiver and shall avoid any effort to discover which lawyers or parties favored or opposed a waiver of disqualification."  The use of the definite article — "[t]he judge" — indicates that the individual in question is the same judge referenced in the earlier provisions, i.e., the "judge who determines himself or herself to be disqualified."  (§ 170.3, subds. (a)(1) & (b)(1); see, e.g., *Valencia, supra,* 3 Cal.5th at p. 361 ["the use of the definite article 'the,' instead of 'a' petitioner, is an indication that [the statute] . . . applies only to" individuals previously mentioned in the statute rather than " 'any petitioner in any proceeding' "].)  The rest of section 170.3, subdivision (b)(3) — adverting to acts that "induce a waiver" and efforts at discovering "which lawyers or parties favored or opposed a waiver of disqualification" — similarly conveys that the provision is referring back to the situation described in section 170.3, subdivision (b)(1) in which "[a] judge who determines himself or herself to be disqualified" asks "the parties and their attorneys whether they wish to waive the disqualification."  (§ 170.3, subd. (b)(1).)  Furthermore, the question of "which lawyers or parties favored or opposed a waiver of disqualification" only arises when a judge initiates the process of disqualification.  (§ 170.3, subd. (b)(3).)  When a party seeks disqualification under section 170.3, subdivision (c), plainly that party is not waiving a judge's disqualification and a judge does not need to expend any effort to ascertain which party "opposed a waiver of disqualification."  (§ 170.3, subd. (b)(3).)

In sum, section 170.3(b)(2) is located directly between provisions that are clearly limited to judicial self-disqualification.  This statutory structure supports interpreting

section 170.3(b)(2)'s prohibition of a "waiver of disqualification" to apply only when the process of judicial self-disqualification is implicated. (See *Hayward v. Superior Court* (2016) 2 Cal.App.5th 10, 44–45 (*Hayward*) ["Subdivision (b) of section 170.3 addresses only the situation of '[a] judge who determines himself or herself to be disqualified.' . . . [T]his conclusion is required by the structure of the statute"].)

Petitioner contends that "[i]f the [L]egislature had wished to limit [s]ubdivision (b)(2)'s application to the circumstances described in [s]ubdivision (b)(1), . . . it could have made the language currently housed in [s]ubdivision (b)(2) part of or a subdivision to [s]ubdivision (b)(1)." By making this argument, Petitioner necessarily acknowledges that the location of a statutory provision matters. (See, e.g., *Valencia, supra,* 3 Cal.5th at p. 361.) Yet, Petitioner disregards the salient fact that the Legislature positioned section 170.3(b)(2)'s nonwaiver provision between provisions that address only judicial self-disqualification. That the Legislature could have *also* made the nonwaiver language in subdivision (b)(2) part of subdivision (b)(1) does not diminish the significance of section 170.3(b)(2)'s proximity to sections 170.3, subdivisions (a), (b)(1), and (b)(3) — which are all limited to circumstances where "a judge [has] determine[d] himself or herself to be disqualified." (§ 170.3, subds. (a)(1) & (b)(1).)

Petitioner further contends that the placement of section 170.3, subdivision (b)(4), which addresses the validity of rulings made by a disqualified judge prior to his or her disqualification, demonstrates that "the [L]egislature included in section 170.3 [subdivision] (b) rules governing disqualification that apply broadly and that are not dependent on whether the disqualification issue was raised by the judge." According to

Petitioner, section 170.3, subdivision (b)(4) "applies whenever disqualification is at issue, regardless of whether it became an issue because the judge raised it or a party did through the [s]ubdivision (c) process."

Section 170.3, subdivision (b)(4) states: "If grounds for disqualification are first learned of or arise after the judge has made one or more rulings in a proceeding, but before the judge has completed judicial action in a proceeding, the judge shall, *unless the disqualification be waived*, disqualify himself or herself, but in the absence of good cause the rulings he or she has made up to that time shall not be set aside by the judge who replaces the disqualified judge." (Italics added.) Petitioner does not cite any authority construing section 170.3, subdivision (b)(4) as applicable to all judicial disqualification scenarios. (Cf. *Hayward*, *supra*, 2 Cal.App.5th at pp. 44–45 ["Subdivision (b) of section 170.3 addresses only the situation of '[a] judge who determines himself or herself to be disqualified' "].)

Indeed, a different provision, section 170.4, subdivision (c)(1), specifically addresses the validity of a judge's ruling after a statement of disqualification is filed. In relevant part, section 170.4, subdivision (c)(1) reads: "If a statement of disqualification is filed after a trial or hearing has commenced by the start of voir dire, by the swearing of the first witness or by the submission of a motion for decision, . . . and if it is determined that the judge is disqualified, all orders and rulings of the judge found to be disqualified made after the filing of the statement shall be vacated." Under its plain terms, section 170.4, subdivision (c)(1) applies when a party attempts to disqualify a judge by bringing a statement of disqualification. Yet, the provision imposes different conditions for voiding a disqualified judge's rulings than section 170.3, subdivision

19

(b)(4). The arguable tension created by this overlap between the provisions calls into question whether section 170.3, subdivision (b)(4) applies as broadly as Petitioner contends.

In any event, it is not necessary for us to define the scope of section 170.3, subdivision (b)(4) here.[10] Whatever section 170.3, subdivision (b)(4) covers, it does not alter the fact that section 170.3(b)(2) is included between two provisions — section 170.3, subdivisions (b)(1) and (b)(3) — that both relate to judicial

---

[10] Nor do we need to explore whether a statement of disqualification based on bias or prejudice that is not promptly presented, if not struck as untimely, would automatically invalidate prior rulings. (Accord, Rothman et al., California Judicial Conduct Handbook (4th ed. 2017) § 7:5, p. 397 [stating that orders made by a disqualified judge are void or voidable and "[t]his is the case even where the disqualification or basis for disqualification existed, but was not judicially determined at the time of the order"]; *Urias v. Harris Farms, Inc.* (1991) 234 Cal.App.3d 415, 426 (*Urias*) [holding that at least when "plaintiff raised the issue of the judge's disqualification in a timely manner after the judge had completed judicial action in the proceeding and before the judgment was final" a judgment rendered by a subsequently disqualified judge "was voidable upon plaintiff's objection"].)

We observe that if such a statement would have this far-reaching effect, then the interpretation pressed by Petitioner would create an untenable incentive to engage in strategic delays in filing a disqualification statement. If it would not, then Petitioner's interpretation still would not eliminate the problem of strategic delays. A party might litigate a case, get a sense of the judge's tentative views on the merits, and then try to disqualify a judge only after obtaining that additional information. For a party who might benefit from delay, there is also an incentive to postpone a disqualification request for purposes of later disruption.

self-disqualification, and is best interpreted as having a similarly limited scope.

The Court of Appeal and Petitioner advance a more expansive reading of the statutory scheme. They rely on the fact that " ' "[t]he Legislature is deemed to be aware of existing laws and judicial decisions in effect at the time legislation is enacted," ' " and at the time that the Legislature enacted section 170.3(b)(2)'s nonwaiver provision, "California courts had consistently based the denial of untimely statements of disqualification on a theory of waiver." (*North American Title*, *supra*, 91 Cal.App.5th at pp. 982, 981; see, e.g., *Caminetti*, *supra*, 22 Cal.2d at p. 391 ["While [section 170] does not specify in so many words a penalty for failure to urge disqualification at the 'earliest practicable opportunity,' the intention is clear that failure to comply with the provision constitutes a waiver"]; but cf. *Krebs v. Los Angeles R. Corp.* (1936) 7 Cal.2d 549, 553 [using the term "waived," but also holding that "plaintiffs *lost* the right to object to the qualification of said judge . . . by failing to file a statement of his disqualification at 'the earliest practicable opportunity' " (italics added)]; *Woolley v. Superior Court* (1937) 19 Cal.App.2d 611, 619 [viewing the issue as one of estoppel].)

The term "waiver" has indeed been loosely used at times, including in the disqualification context, to signify what is properly understood as a forfeiture.[11] (See *North American*

---

[11] Given how imprecisely the word "waive" has been used, we do not rely solely on the fact that section 170.3(b)(2) uses the term "waiver" to dismiss out of hand the argument that when section 170.3(b)(2) says there "shall be no waiver of

*Title*, *supra*, 91 Cal.App.5th at p. 981, fn. 7.) Yet "[w]aiver is different from forfeiture." (*United States v. Olano* (1993) 507 U.S. 725, 733 (*Olano*); see also *Lynch v. California Coastal Com.* (2017) 3 Cal.5th 470, 476 (*Lynch*) ["Although the distinctions between waiver . . . and forfeiture can be significant, the terms are not always used with care"]; *People v. Simon* (2001) 25 Cal.4th 1082, 1097, fn. 9 (*Simon*) [stating that because " '[w]aiver is different from forfeiture,' " "even though past decisions in this area regularly use both terms, in our subsequent discussion we generally shall refer to the issue as one of forfeiture," the "most accurate [way] to characterize the issue"]; *People v. Saunders* (1993) 5 Cal.4th 580, 590, fn. 6 (*Saunders*) [similar]; *Goodwin v. Comerica Bank, N.A.* (2021) 72 Cal.App.5th 858, 867, fn. 8 ["Waiver and forfeiture are distinct doctrines with different substantive requirements, despite the informal shorthand by which lawyers and courts often indiscriminately — and at times confusingly — use 'waiver' to refer to both"].)

"Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.' " (*Olano, supra*, 507 U.S. at p. 733; see also *ibid.* [tracing this definition of "waiver" to a case decided in 1938]; *People v. Aguilar* (1984) 35 Cal.3d 785, 794 [referring to " 'the classic definition of a waiver — "an intentional relinquishment or abandonment of a known right" ' "]; *People v. Dorado* (1965) 62 Cal.2d 338, 352 [" 'a

disqualification" for actual bias, it means that there shall be no forfeiture either. Instead, as discussed, we rely on the surrounding text and structure of the statute and other indicia of legislative intent, discussed *post*, to reject the contention.

waiver is an intentional relinquishment or abandonment of a known right or privilege' "].) Although "the two terms on occasion have been used interchangeably" (*In re Sheena K.* (2007) 40 Cal.4th 875, 880, fn. 1 (*Sheena K.*)), "they are quite different" (*People v. Giles* (2007) 40 Cal.4th 833, 849).

In short, the use of the term "waiver" in *Caminetti, supra*, 22 Cal.2d at p. 391, and cases following it, was imprecise. "Waiver" is not properly used to describe a circumstance other than when a party voluntarily relinquishes or abandons a known right. To dispel any possible lingering confusion, we stress once more that forfeiture "refers to a failure to object or to invoke a right." (*Sheena K., supra*, 40 Cal.4th at p. 880, fn. 1.) When a party does not raise an objection in the manner required, their failure to do so, without more, constitutes a forfeiture, not a waiver. (See, e.g., *Olano, supra*, 507 U.S. at p. 733; *Quigley v. Garden Valley Fire Protection Dist.* (2019) 7 Cal.5th 798, 805, fn. 4; *Lynch, supra*, 3 Cal.5th at pp. 475–476; *Sheena K.*, at p. 880, fn. 1; *Simon, supra*, 25 Cal.4th at p. 1097, fn. 9; *Cowan v. Superior Court* (1996) 14 Cal.4th 367, 371; *Saunders, supra*, 5 Cal.4th at p. 590, fn. 6.) We encourage courts and litigants to use precise terminology and avoid terms like "waiver" or "implied waiver" when discussing the potential consequence of failing to take timely action pursuant to statute, including the requirement to present a timely statement of disqualification pursuant to section 170.3(c)(1).

Even assuming the Legislature was aware of *Caminetti* and similar cases, however, it does not follow that the Legislature intended for the nonwaiver provision of section 170.3(b)(2) to alter the scope of section 170.3(c)(1)'s "earliest practical opportunity" timeliness requirement. Notably, although *Caminetti* held the failure to pursue disqualification at

the earliest practicable opportunity results in waiver, the court also stressed that the " 'earliest practicable opportunity' " requirement affords "an *additional* statutory means by which a disqualification . . . may be waived" that is distinct from "a written stipulation" indicating the parties have no objection to an otherwise-disqualified judge presiding over the matter. (*Caminetti*, *supra*, 22 Cal.2d at p. 391, italics added.)  Thus, consistent with *Caminetti*, the Legislature could have enacted section 170.3(b)(2), prohibiting a "stipulation" waiving certain disqualification bases, yet left unchanged the "additional" statutory requirement of timeliness under section 170.3(c)(1). (*Caminetti*, at p. 391.)

In any event, for the reasons discussed above, it is evident the Legislature assigned "waiver" a more limited meaning, consistent with its correct usage and with its use in section 170.3, subdivision (b)(1).  The written waiver envisioned by section 170.3, subdivision (b) functions as "the 'intentional relinquishment or abandonment of a known right' " (*Olano*, *supra*, 507 U.S. at p. 733) — namely, the right not to proceed before a judge who has identified himself or herself as disqualified.  Section 170.3(b)(2) prohibits such waivers under specified circumstances; it does not speak to the *unintended* loss of the right to seek to disqualify a judge because of a failure to take timely action as required by statute. (Accord, *Lynch*, *supra*, 3 Cal.5th at p. 475 [" ' "Waiver always rests upon intent" ' "].)

Moreover, the Legislature may have reasonably decided to draw a distinction between *waiver* of a judge's self-disqualification on the basis of bias and *forfeiture* of a claim that a judge should have disqualified herself on the basis of bias but did not.  Simply put, there is a difference in significance between a judge's *admission* of bias and a litigant's *allegation* of bias.  It

is one thing if a judge — who is in the best position to know — identifies personal bias that prevents the judge from performing his or her duties in accordance with the judicial oath. But personal bias is difficult to discern from an outside perspective, which is why a litigant's arguments for disqualification on the basis of bias must almost necessarily focus on doubts raised by the judge's conduct. By requiring timeliness in raising these doubts, we are not suggesting that actual bias should escape review. We are, rather, recognizing the special significance the Legislature may reasonably place on a judge's own assessment of actual bias in a system of impartial adjudication that depends, at least in the first instance, on judges' integrity and their ability to honestly assess whether they can perform their duties in accordance with their oath. We are also recognizing that the Legislature may have assigned greater weight to competing considerations of gamesmanship and disruption when a *party* seeks a judge's disqualification based on an allegation of bias or prejudice. Thus, when a judge determines he or she is biased and cannot fairly judge a case, it makes sense that this should be the end of the matter. When a judge determines that he or she *can* fairly judge a case, the statutory scheme leaves ample room for litigants to dispute the judge's self-assessment — but this ability is not unlimited. The requirement of timeliness is not an unreasonable burden to place on a litigant in this context, and it thus poses no genuine risk of undermining public confidence in an impartial judiciary.

Furthermore, as Real Parties in Interest explain, additional safeguards exist within the context of judicial self-disqualification where "it is the responsibility of the judiciary, acting in concert with its own self-imposed ethical principles, to come forward promptly when grounds for disqualification

become evident." Because of the "self-imposed ethical principles" on the judiciary, precluding waiver of certain types of judicially self-disclosed disqualifications presents few concerns of gamesmanship and avoidable delay, unlike the situation with party-initiated disqualification attempts. As such, there is no incongruity in barring parties from waiving disqualification where a judge has disclosed on the record that he or she is in fact biased or prejudiced against a party, while separately requiring a party who believes that a judge is biased or prejudiced to bring such a claim in a timely manner.

We thus conclude that the nonwaiver provision of section 170.3(b)(2) is applicable only to scenarios of judicial self-disqualification. It does not extend to the circumstance addressed by section 170.3(c)(1), in which "a judge who should disqualify himself or herself refuses or fails to do so." (§ 170.3(c)(1).)

### C. Legislative History

The legislative history of sections 170.3(b)(2) and 170.3(c)(1) bolsters the conclusion that the nonwaiver provision applies only to circumstances of judicial self-disqualification. (See, e.g., *Larkin v. Workers' Comp. Appeals Bd.* (2015) 62 Cal.4th 152, 164 (*Larkin*) [consulting legislative history "[t]o the extent any uncertainty nonetheless persists" after examining the statutory text and structure].)

Section 170.3(b)(2) was enacted in 1990 by Senate Bill No. 2316 (1989–1990 Reg. Sess.). The California Judges Association sponsored the bill. (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 2316 (1989–1990 Reg. Sess.) as introduced Feb. 27, 1990, p. 2.) Through a legislative analysis, the California Judges Association informed legislators that the

intention behind the bill was to bring " 'Code of Civil Procedure section 170.3 on *judicial self-disqualification* into conformity with the new restrictions voted into the Code of Judicial Conduct by California's judges.' "[12] (*Ibid.*, italics added; see also Sen. Com. on Judiciary, Analysis of Sen. Bill No. 2316 (1989–1990 Reg. Sess.) as introduced Feb. 27, 1990, p. 2 [stating that the legislative measure was "proposed . . . in order to ensure statutory conformity with . . . ethical guidelines" that the judiciary had imposed upon itself].)

In relevant part, the Code of Judicial Conduct referenced above provided: "A judge disqualified for any reason other than those expressed in Canon 3C(1)(a)[13] or Canon 3C(1)(b)[14] may, instead of withdrawing from the proceeding, disclose on the record the basis of the disqualification, and may ask the parties and their lawyers whether they wish to waive the disqualification." (Former Cal. Code Jud. Conduct, canon 3D, as amended Sept. 18, 1989.) This Code of Judicial Conduct thus suggested that the two bases for which no waiver of disqualification is permitted are implicated only where a judge is self-disqualifying, i.e., when he or she has "disclose[d] on the record the basis of the disqualification" but cannot "ask the

---

[12] "The California Code of Judicial Conduct was replaced by the California Code of Judicial Ethics, effective January 15, 1996." (*Broadman v. Commission on Judicial Performance* (1998) 18 Cal.4th 1079, 1097, fn. 5.)

[13] "[T]he judge has a personal bias or prejudice concerning a party." (Former Cal. Code Jud. Conduct, canon 3C(1)(a), as amended Sept. 18, 1989.)

[14] "[T]he judge served as lawyer in the matter in controversy, or the judge has been a material witness concerning it." (Former Cal. Code Jud. Conduct, canon 3C(1)(b), as amended Sept. 18, 1989.)

parties and their lawyers whether they wish to waive the disqualification." (Former Cal. Code Jud. Conduct, *supra*, canon 3D.) Because this Code of Judicial Conduct limited its nonwaiver provision to judicial self-disqualification, it supports a similar reading of the statute since, as noted, the statute was intended to bring the law into alignment with this Code of Judicial Conduct.

Similarly, a legislative committee analysis of Senate Bill No. 2316 stated that the bill "would prohibit a waiver of disqualification in cases where *the judge has indicated a need for recusal*." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 2316 (1989–1990 Reg. Sess.) as introduced Feb. 27, 1990, p. 2, italics added ["This bill would prohibit a waiver of disqualification in cases where the judge has indicated a need for recusal due to personal bias or prejudice against a party to the proceeding, or because of status as a prior attorney or material witness in the matter"]; see also *id.* at p. 1 ["Key Issue" presented in the legislation is whether "a waiver of judicial disqualification [should] be prohibited to the parties in an action *when the judge has disqualified himself or herself* on the basis of personal bias or prejudice" (italics added & capitalization omitted)]; Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 2316 (1989–1990 Reg. Sess.) as introduced Feb. 27, 1990, pp. 1–2 [similar language].)

Turning to the timeliness requirement, we observe that section 170.3(c)(1) was enacted in 1984, six years before the nonwaiver provision of section 170.3(b)(2) was passed into law. (See Sen. Bill No. 1633 (1983–1984 Reg. Sess.); Stats. 1984, ch. 1555, § 7, p. 5481.) The timeliness requirement of subdivision (c)(1) thus predates the nonwaiver provision of subdivision (b)(2). Despite this sequence, there is no indication

that the Legislature, in enacting subdivision (b)(2)'s nonwaiver provision, meant to relieve parties of their reasonable obligation to present all known disqualification issues promptly. The legislative history of section 170.3(b)(2) does not include *any* reference to party-initiated disqualifications or the timeliness requirement that governed such requests.

The Court of Appeal did not discuss the above-mentioned legislative history materials. Instead, it emphasized other language that stated Senate Bill No. 2316 " ' " 'helps assure that even the shadow of bias is kept out of our courts.' " ' " (See *North American Title, supra*, 91 Cal.App.5th at p. 977; see *id.* at pp. 980, 982, 994.) The Court of Appeal asserted that its construction of the statute "aligns with th[is] purpose" of the bill. (*Id.* at p. 982.) In full, the statement referring to the "shadow of bias," as found in various committee analyses, reads, "The purpose of this measure is to preclude even the shadow of bias in the courts, *and* to conform statute with recently adopted provisions of the Code of Judicial Conduct." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 2316 (1989–1990 Reg. Sess.) as introduced Feb. 27, 1990, p. 2, italics added; Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 2316 (1989–1990 Reg. Sess.) as introduced Feb. 27, 1990, p. 2, italics added.) As discussed above, the "recently adopted provisions of the Code of Judicial Conduct" addressed only instances of judicial self-disqualification. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 2316, *supra*, p. 2; Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 2316, *supra*, p. 2.) Moreover, the same analysis stated that the bill would "prohibit a waiver of disqualification in cases where *the judge has indicated a need for recusal*." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 2316, *supra*, p. 2, italics added & Sen. Rules Com., Off. of

Sen. Floor Analyses, Analysis of Sen. Bill No. 2316, *supra*, p. 2, italics added.) In contrast to this clear, limiting language, the reference to the "shadow of bias" is too general and nonspecific to support the Court of Appeal's interpretation of the nonwaiver provision.

In sum, the legislative history supports, and in no way undermines, what we gleaned from the statutory text and structure: the prohibited bases for waiver of disqualification — bias or prejudice, and service as an attorney or witness in the matter — are implicated only where judicial self-disqualification is involved. They are not relevant when "a judge who should disqualify himself or herself refuses or fails to do so" (§ 170.3(c)(1)), and a party therefore seeks to disqualify a judge by filing a written verified statement of disqualification. In this latter situation, the Legislature adopted a statutory procedure which requires a party to file a written statement of verification "at the earliest practicable opportunity" (*ibid*.) regardless of the asserted basis for disqualification under section 170.1.

### D. Case Law

Relevant case law also supports our reading of section 170.3(b)(2)'s nonwaiver provision. Petitioner has not cited any case, prior to the decision below, in which a court invoked section 170.3(b)(2) when *a party* sought disqualification after "a judge who should disqualify himself or herself refuse[d] or fail[ed] to do so." (§ 170.3(c)(1); accord, *North American Title*, *supra*, 91 Cal.App.5th at p. 983 ["Senate Bill No. 2316 was enacted to

be operative in 1990, but no opinion has addressed its applicability on implied waiver due to untimeliness"].)[15]

Meanwhile, our Courts of Appeal have consistently applied the timeliness requirement of section 170.3(c)(1) where parties have alleged as grounds for disqualification that a judge "has a personal bias or prejudice concerning a party" (§ 170.3, subd. (b)(2)(A)) or "served as an attorney in the matter in controversy" (§ 170.3, subd. (b)(2)(B)). For example, in *Alhusainy v. Superior Court* (2006) 143 Cal.App.4th 385, 394, the court held that "[w]hen a party seeks to disqualify a judge *based on actual bias*, the application 'shall be presented at the earliest practicable opportunity after discovery of the facts constituting the ground for disqualification.' " (Italics added.) Applying this principle, the court found the petitioner did not "comport with the statutory requirement of acting at the earliest practicable opportunity." (*Ibid.*)

Other decisions have similarly evaluated the timeliness of disqualification statements premised on allegations of bias, prejudice, or prior involvement in a case. (E.g., *Magana v. Superior Court* (2018) 22 Cal.App.5th 840, 850, 852, 855–857 [upholding a trial judge's decision to strike a statement of disqualification as untimely even though the attorney seeking disqualification alleged that the judge " 'has a bias against me' " and has treated the attorney "unfairly"]; *Urias, supra,* 234 Cal.App.3d at pp. 424–426 [assessing whether a statement of disqualification was submitted at the earliest opportunity

---

[15] Although the Court of Appeal used the term "implied waiver" (e.g., *North American Title, supra,* 91 Cal.App.5th at p. 980), as discussed above, the issue here is properly understood as one of forfeiture.

even though the ground for disqualification was that the judge was deemed to have served as a lawyer in the proceeding, which is covered by § 170.3, subd. (b)(2)(B)]; *In re Steven O.* (1991) 229 Cal.App.3d 46, 51–55 [similar]; accord, *Tri Counties Bank v. Superior Court* (2008) 167 Cal.App.4th 1332, 1334 [holding "the trial court properly struck the untimely disqualification claim" when the basis for disqualification was that the court had "conducted an independent investigation of a factual issue material to a class certification motion in the case, thereby creating the appearance of partiality"].) Although these appellate decisions are not binding upon us, they demonstrate that there has been uniformity on this question for some time.

### E. Other Considerations

Other policy interests and practical considerations weigh in favor of limiting section 170.3(b)(2)'s nonwaiver provision to situations involving judicial self-disqualifications.

Real Parties in Interest argue that "much mischief can occur if adversarial litigants are permitted to withhold a claim of judicial disqualification *indefinitely*, for strategic purposes." We have expressed similar concerns in the past. In *Caminetti*, for example, we found it " 'intolerable to permit a party to play fast and loose with the administration of justice by deliberately standing by without making an objection [of judicial disqualification] of which he is aware and thereby permitting the proceedings to go to a conclusion which he may acquiesce in, if favorable, and which he may avoid, if not.' " (*Caminetti*, *supra*, 22 Cal.2d at p. 392; see also *People v. Rodriguez* (2014) 58 Cal.4th 587, 626 (*Rodriguez*) ["Defendant may not go to trial before a judge and gamble on a favorable result, and then assert

for the first time on appeal that the judge was biased"]; *Hull, supra*, 1 Cal.4th at pp. 272–273 [similar].)

The same concerns apply here. We agree with Real Parties in Interest that, if a party's right to claim bias, prejudice, or prior involvement in a case does not need to be raised "at the earliest practicable opportunity" (§ 170.3(c)(1)) and instead can *never* be forfeited, parties would have an incentive to "strategically withhold[] allegations of bias until the most opportune time." By engaging in such behavior, a party may gain a " 'windfall' " wherein "[i]f the ultimate judgment were favorable to the moving party, the disqualification issue would be moot," but "if the ultimate judgment were unfavorable, the moving party would receive a second 'bite at the apple,' i.e., a second opportunity to win the merits of the case." (*Hull, supra*, 1 Cal.4th at p. 273.)[16]

---

[16]    Real Parties in Interest also point out that eliminating untimeliness as a basis for striking a disqualification statement premised on allegations of bias or prejudice "will increase burdens on the Judicial Council and on the many judges who will have to conduct hearings concerning the alleged misconduct of their fellow judges." (See § 170.3, subd. (c)(5) [specifying that in a case where a judge denies that he or she is disqualified, "the question of disqualification shall be heard and determined by another judge agreed upon by all the parties who have appeared or, in the event they are unable to agree within five days of notification of the judge's answer, by a judge selected by the chairperson of the Judicial Council, or if the chairperson is unable to act, the vice chairperson"].) This concern also carries weight. (See *Hull, supra*, 1 Cal.4th at p. 272 ["Section 170.3 has the dual purpose of promoting 'judicial economy' and 'fundamental fairness' "].)

The Court of Appeal gave three reasons why, in its view, allowing disqualification statements to be brought at any time during litigation was not likely to result in gamesmanship or unduly delayed proceedings. (See *North American Title, supra,* 91 Cal.App.5th at p. 983 [reasoning that its holding "is unlikely to cause issues"].) First, the Court of Appeal asserted parties would have no incentive to engage in gamesmanship. According to the Court of Appeal, "If a party is truly concerned the trial judge lost his or her objectivity, there would be no incentive to wait to raise the issue of disqualification until after obtaining a ruling, as the party would be under no illusion the judge would provide a favorable ruling." (*Ibid.*) But the Court of Appeal's observation does not account for the fact that a party who is willing to engage in gamesmanship may not be "truly concerned the trial judge lost his or her objectivity"; under such circumstances, a party might indeed have an "incentive to wait to raise the issue of disqualification until after obtaining a ruling." (*Ibid.*; accord, e.g., *Rodriguez, supra,* 58 Cal.4th at p. 626; *Hull, supra,* 1 Cal.4th at p. 273.)[17]  Moreover, even

---

Petitioner responds that "even if [its reading of the statutes] were to promote more disqualification requests, the [L]egislature is the proper body to address any issues that arise." This argument would be persuasive only if the Legislature had indeed intended the interpretation which Petitioner advances. But Petitioner has not convincingly demonstrated any such legislative intent.

[17]  Petitioner makes a similar point, asserting that because section 170.3, subdivision (b)(4) limits a party's ability to set aside rulings an accused judge has already made, "a party has no incentive to sit on his or her rights . . . because there is not necessarily a second bite at the apple to be gained." Petitioner's argument presupposes that section 170.3, subdivision (b)(4)

parties who subjectively perceive bias or prejudice may weigh their options and decide to forego filing a statement of disqualification (for the time being), out of a belief that an allegedly biased judge may nevertheless rule in their favor, and if not, they will get another opportunity to present their claims before a different judge.

Second, the Court of Appeal was not concerned its holding would result in undue delay of proceedings. The Court of Appeal reasoned that "statements of disqualification for personal bias or prejudice filed on the eve of trial or hearing would not prevent the trial from proceeding" because section 170.4, subdivision (c) "allows a trial or hearing to continue . . . if a statement of disqualification has been filed less than 10 days before the commencement of said hearing or trial." (*North American Title*, *supra*, 91 Cal.App.5th at p. 983.) But, by the court's reasoning, if a statement is filed more than "10 days before the

_____

applies in situations where a party is attempting to disqualify a judge by filing a verified statement of disqualification, which is a question we do not decide here. But even if we assume that section 170.3, subdivision (b)(4) is broadly applicable, we are still not persuaded that a party would have "no incentive" to delay in seeking disqualification.

As discussed, section 170.3, subdivision (b)(4) states that in certain circumstances the rulings of a disqualified judge "shall not be set aside" "in the absence of good cause." The "good cause" requirement means a party will not "necessarily" be able to vacate a judge's rulings. This does not mean the party will have "no incentive" whatsoever to delay in bringing a disqualification motion, however. The delay itself may be perceived as beneficial, and a party may find the "gamble" of being able to set aside a ruling to be worthwhile (*Rodriguez*, *supra*, 58 Cal.4th at p. 626), even if there is no guarantee that the litigant will "necessarily [get] a second bite at the apple."

commencement of . . . [a] hearing or trial," it *could* prevent the trial from proceeding. (*Ibid*.) The limited shield provided by section 170.4, subdivision (c) does not provide any significant protection against strategic delays.

In addition, section 170.4, subdivision (c) does not prevent a ruling from being vacated if a judge chooses to proceed after a statement of disqualification has been filed. The provision states: "If a statement of disqualification is filed after a trial or hearing has commenced by the start of voir dire, by the swearing of the first witness or by the submission of a motion for decision, . . . [t]he issue of disqualification shall be referred to another judge for decision as provided in subdivision (a) of Section 170.3, and if it is determined that the judge is disqualified, all orders and rulings of the judge found to be disqualified made after the filing of the statement shall be vacated." (§ 170.4, subd. (c)(1).) Thus, to avoid the risk of having a ruling invalidated, a judge may well stay proceedings when a matter of disqualification has to be referred to another judge, even if the challenged judge does not believe himself or herself to be disqualified.

Third, the Court of Appeal reasoned its holding would not strain judicial resources. The Court of Appeal pointed out that even though a trial judge would be "unable to strike statements of disqualification for personal bias or prejudice as untimely" under the Court of Appeal's holding, the judge "still has authority to strike statements as insufficient . . . or as successive statements failing to raise new facts" under section 170.4. (*North American Title, supra*, 91 Cal.App.5th at p. 983; see § 170.4, subds. (b) ["if a statement of disqualification is untimely filed or if on its face it discloses no legal grounds for disqualification, the trial judge against whom it was filed may

order it stricken"], (c)(3) ["Repetitive statements of disqualification not alleging facts suggesting new grounds for disqualification shall be stricken by the judge against whom they are filed"].) But both of these bases permitting a challenged judge to strike a statement of disqualification have their own limits. By its very nature, the successiveness bar still allows a party one free bite of the apple. Similarly, as Real Parties in Interest point out, the bar against frivolousness does not change the fact that under Petitioner's construction, a statement of disqualification "must be referred to another judge for determination if such statement contains *any* factual allegation supporting bias (whether or not true)." (See § 170.3, subd. (c)(5) ["[a] judge who refuses to recuse himself or herself shall not pass upon . . . the sufficiency in . . . fact, or otherwise, of the statement of disqualification filed by a party"].)

Petitioner also contends that "[i]t makes no sense that waiver would be prohibited only where a judge is aware enough to recognize his bias and call it to the parties' attention" because it is "[t]he judge who is *unable* to recognize bias . . . who merits more scrutiny." (Italics added.) Yet a judge who is alleged to be biased does not escape scrutiny; the statute merely provides that the party complaining of the judge's alleged partiality must bring the matter to the court's attention promptly upon "discovery of the facts constituting the ground for disqualification." (§ 170.3(c)(1).)

Finally, throughout its analysis, the Court of Appeal emphasized that "the disqualification statute should be broadly construed" to achieve the important objective of "instill[ing] public confidence in the judiciary." (*North American Title*, *supra*, 91 Cal.App.5th at p. 974; see also *id*. at pp. 978, 980.) We do not retreat from this principle of liberal interpretation, but

"[w]hat this principle cannot do is to justify an otherwise erroneous construction." (*Larkin*, *supra*, 62 Cal.4th at p. 167.) In any event, the result we reach here supports, rather than undermines, public confidence in the judiciary. It confirms the ability of parties to challenge judges based on alleged bias or prejudice, it encourages the prompt and efficient adjudication of such challenges, and it discourages litigants from withholding claims of bias or prejudice for strategic reasons.

The Legislature has set forth the procedures that must be followed when a party seeks to file a verified statement of disqualification pursuant to section 170.3(c)(1). The procedures are straightforward — requiring a party to act "at the earliest practicable opportunity after discovery of the facts constituting the ground for disqualification" (§ 170.3(c)(1)) — and they ensure the prompt resolution of any asserted claims of personal bias or prejudice. Assuming that they follow such procedures, parties who challenge a judge's impartiality receive full scrutiny of the judge's fitness to preside over the matter, all the while advancing the public policy considerations requiring prompt review of the question of disqualification of a judge.

## III. DISPOSITION

We hold that a verified statement of disqualification alleging judicial bias or prejudice must be presented "at the earliest practicable opportunity after discovery of the facts constituting the ground for disqualification." (§ 170.3(c)(1).) If a party fails to file a statement of disqualification in a timely manner, "the trial judge against whom [the statement] was filed may order it stricken." (§ 170.4, subd. (b).)

Because the Court of Appeal held to the contrary, we reverse its judgment. Our interpretation of section 170.3(b)(2)

means that Petitioner's statement of disqualification must be assessed for timeliness.  As the Court of Appeal has not made this assessment, it is unnecessary for us to address the parties' secondary arguments related to section 170.2.  (Accord, *Penthouse*, 137 Cal.App.3d at p. 982.)  Upon remand, the Court of Appeal should conduct further proceedings consistent with this opinion, including consideration in the first instance of whether Petitioner's statement of disqualification was filed "at the earliest practicable opportunity."  (§ 170.3(c)(1).)

**GUERRERO, C. J.**

**We Concur:**

**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**
**EVANS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  North American Title Company v. Superior Court

---

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 91 Cal.App.5th 948
**Review Granted (unpublished)**
**Rehearing Granted**

---

**Opinion No.** S280752
**Date Filed:**  October 28, 2024

---

**Court:**  Superior
**County:**  Fresno
**Judge:**  Jeffrey Y. Hamilton, Jr.

---

**Counsel:**

Morgan, Lewis & Bockius, Thomas Peterson, Barbara J. Miller, John D. Hayashi; McCormick Barstow and Scott M. Reddie for Petitioners.

No appearance for Respondent.

Wagner, Jones, Kopfman & Artenian, Andrew B. Jones, Lawrence M. Artenian; Cornwell & Sample, Stephen R. Cornwell, René Turner Sample; Wanger Jones Helsley, Patrick D. Toole and Benjamin C. West for Real Parties in Interest.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Barbara J. Miller
Morgan, Lewis & Bockius LLP
600 Anton Boulevard, Suite 1800
Costa Mesa, CA 92626
(949) 399-7107

Lawrence M. Artenian
Wagner, Jones, Kopfman & Artenian LLP
1111 East Herndon Avenue, Suite 317
Fresno, CA 93720
(559)-449-1800

Patrick D. Toole
Wanger Jones Helsley PC
265 East River Park Circle, Suite 310
Fresno, CA 93720
(559) 233-4800